**WALKER, Appellant and Cross–Appellee,**

v.

**CADILLAC MOTOR CAR DIVISION et al., Appellees;
DeLorean Cadillac, Inc., Cross–Appellant.**

[Cite as *Walker v. Cadillac Motor Car Div.* (1989), 63 Ohio App.3d 220.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 55407, 55437.

Decided June 12, 1989.

*Everett Chandler* and *Perry Walker,* for appellant and cross-appellee.

*Weston, Hurd, Fallon, Paisley & Howley* and *Gary W. Johnson,* for appellees Cadillac Motor Car Division and DeLorean Cadillac, Inc.

*Robert Polkar,* for cross-appellant DeLorean Cadillac, Inc.

JOHN F. CORRIGAN, Judge.

In this consolidated appeal, the plaintiff car buyer challenges the trial court's directed verdict for the defendant automobile dealership and manufacturer on his claim for breach of express warranties, deceptive trade practices, fraud, and negligence (App. No. 55437). The consumer, in his first assignment of error, claims the trial court erred in failing to explicitly rule on his claims under the federal Magnuson–Moss Warranty Act, Section 2301 *et seq.,* Title 15, U.S.Code. In his remaining five assignments of error, the car buyer argues that the trial court erred in ordering a directed verdict for the defendants claiming that the evidence, construed most strongly in his favor,

establishes that (a) the defendants breached a service agreement and express warranties; and (b) the defendants engaged in unfair sales practices as prohibited under R.C. 1345.02(B)(1) and (2).

The car dealership appeals from the trial court's judgment for the consumer on the dealership's counterclaim for abuse of process and attorney fees (App. No. 55407). In its first assignment of error, the car dealership claims that the evidence establishes that the consumer maliciously used legal processes for an unlawful purpose. The dealership argues in its remaining two assignments of error that the evidence supports its claims for attorney fees pursuant to R.C. 1345.09(F)(1) and 4165.03. Each of the parties' assigned errors lacks merit, so we affirm the trial court's judgment.

## I

Neither of the appellants has filed a complete copy of the trial transcript. Accordingly, our review of their assigned errors is limited to the exhibits filed with the trial court and the transcript of the trial court's directed verdict findings of fact and conclusions of law which the dealership filed with that court. See Civ.R. 50(E) (statement of basis of decision required where trial court directs a verdict); App.R. 9(A) (record on appeal). We accept the trial court's summary of the evidence as accurate absent a complete transcript of the proceedings. Further, where the trial court's factual findings are silent with regard to a fact material to either party's case, we presume that such fact did not exist. Cf. *McShane v. Keiser* (1959), 108 Ohio App. 514, 516–517, 9 O.O.2d 495, 496–497, 155 N.E.2d 709, 711–712.

The record as it is reveals the following facts. The consumer purchased for $8,000 a 1979 Cadillac Coupe DeVille from the dealership on June 29, 1984. The mileage for the vehicle at the time of purchase registered at over 60,000 miles. Stamped, in bold red print, on the front of the purchase agreement is the following provision:

"THIS VEHICLE IS SOLD 'AS IS'

" 'This vehicle is being purchased in defective condition as to its mechanical and/or body condition and is accepted without warranty, expressed or implied, with the understanding that the purchaser hereof prior to use on the highways will make the necessary repairs.' "

The car buyer did not sign in the blank space provided below this provision. He testified that he refused to purchase the vehicle "as is," insisting that the dealer include a service agreement as part of the purchase.

On the back of the purchase agreement, in bold black print, are the following disclaimers, which the consumer admitted reading prior to the purchase:

"9. There are no warranties, expressed or implied, made by the seller herein, or the manufacturer, on the vehicle or chassis described on the face hereof except that in the case of a new vehicle or chassis the printed General Motors new vehicle warranty delivered to purchaser with such vehicle or chassis shall apply and the same is hereby made a part hereof as though fully set forth herein. The new vehicle warranty is the only warranty applicable to such new vehicle or chassis and is expressly in lieu of all other warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. In the case of a used vehicle or chassis, the applicability of an existing manufacturer's warranty therein, if any, shall be determined solely by the terms of such warranty.

"10. Any used motor vehicle sold to Purchaser by Dealer under this Order is sold at the time of delivery by Dealer without any guarantee or warranty expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, as to its condition or the condition of any part thereof except as may be otherwise specifically provided in writing on the face of this Order or in a separate writing furnished to Purchaser by Dealer. Regardless of the mileage appearing on the odometer, the seller makes no warranty as to the extent the vehicle has been used or driven."

The purchase price for the vehicle expressly included a 12–month/12,000–mile service agreement. That service agreement provides in relevant part:

"Cadillac agrees with the owner of this Value Protection Service Agreement that the selling Dealer (or any other participating Cadillac Dealer, if it is not feasible for the vehicle to return to the selling Dealer) will service the eligible Cadillac at such Dealer's place of business, replacing or repairing any of the parts covered which fail to function in normal service during the period of this Service Agreement. Service will be performed using new, remanufactured or rebuilt parts. Any such repairs will be made without charge for parts or labor except for the first $25 of costs set forth in repair orders covering each service visit made to a participating Cadillac Dealer under this Service Agreement.

| "Systems Covered | Individual Parts Included |
| --- | --- |
| "The Power Train | Including the engine—that is, cylinder block, head, intake manifold, water pump, and all internal engine parts; automatic/manual transmission—including case and all internal parts; drive line and front or rear drive axle assembly, seals, and all other internal parts. Diesel pumps and injectors are covered upon the expiration of the emission warranties |

| | |
|---|---|
| "Power Steering System | Power steering pump, cooler and lines; power steering gear, and steering linkage |
| "Charging System | Generator and voltage regulator |
| "Starting Motor | Including solenoid and clutch |
| "Climate Control System | All climate control components |
| "Power Window System | Power window motor, regulator, switch and wiring harness |

"Exclusions from Value Protection Plan Coverage

"1. Failure to Perform Required Maintenance. This Service Agreement does not cover repair or replacement of any part that fails because of failure to perform the required maintenance services set forth in the applicable Cadillac maintenance schedule.

"2. Misuse, Abuse, Etc. This Service Agreement does not cover repairs to the eligible Cadillac required as a result of accident, fire or other casualty, misuse, negligence, racing, or failures caused by alterations of any part of the vehicle.

"Eligibility

"An eligible Cadillac for purposes of this Service Agreement shall mean any previously owned Cadillac of the current or five preceding model years, which has not been driven for more than 75 months or 75,000 miles, whichever occurs first, from the date the vehicle was originally placed in service as a new Cadillac (includes Dealer demonstrator or company car in-service date)."

Ten to fourteen days following the purchase of the car, the consumer brought it to the dealership to repair the climate control system. The car buyer testified that the dealership fixed the problem. The next month he complained of a similar problem and, again, the dealership made the necessary repairs.

Sometime thereafter the car was stolen and later recovered. In November 1984, the customer brought the car to the dealership. The dealership repaired all of the theft-related damage and the customer's insurance paid for those repairs. The customer further complained of continuing problems with the climate control system and "oil consumption" problems. The repair bill shows that the dealership charged the customer $25 for these repairs. The dealership refrained from charging the customer for two subsequent oil consumption tests conducted in the following two months.

On January 21, 1985, the dealership replaced the car's alternator and a fuse. The dealership apparently charged the customer $46 for these repairs. Two weeks later the customer again brought his car to the dealership apparently complaining of engine problems. At trial the customer admitted that on this occasion the car had merely run out of gas.

In the next four months thieves stole the car twice and the dealership twice repaired theft-related damage. The buyer's insurance company paid for these repairs.

On May 25, 1985, the dealership replaced the vehicle's water pump and repaired the automobile's radio. While the service agreement had apparently expired since the car's recorded mileage had reached 77,000 miles, there is also no evidence that the dealership charged the customer for these repairs. Repairs done on September 5, 1985 related to damage from an accident which occurred when the customer's girlfriend was driving the car. On November 4, 1985, the dealership charged the customer $90.53 for repairs related to "engine problems." At this point the vehicle's mileage registered at 82,000 miles.

On April 4, 1986, the defendant filed his complaint against the dealership and the manufacturer. The complaint, in its amended form, includes six "causes of action" encompassing nine "counts." The defendant alleged (1) violations of the Consumer Sales Act, R.C. 1345.01 *et seq.;* (2) violations of the Deceptive Trade Practices Act, R.C. 4165.01 *et seq.;* (3) breach of the service agreement; (4) breach of express and implied warranties; (5) fraud; and (6) negligence. The consumer also interwove throughout his complaint various allegations that the defendants had violated the Magnuson–Moss Warranty Act, Section 2301 *et seq.,* Title 15, U.S.Code. In its counterclaim the dealership alleged abuse of process and requested attorney fees pursuant to R.C. 1345.09(F)(1) and 4165.03.

At the close of the consumer's evidence, the trial court granted the defendants' motion for a directed verdict. Pursuant to an agreement between the parties, the trial court determined the dealership's counterclaim without the presentation of further evidence and found for the consumer.

## II

■ The consumer, in his first assignment of error, argues that the trial court violated his due process rights by failing to specifically address his claims under the Magnuson–Moss Warranty Act.

In his complaint, the consumer alleged essentially nine causes of action. The consumer included allegations that the defendants had violated the Magnuson–Moss Warranty Act in three of those general causes of action. He alleged violations under the Act for (1) breach of the service agreement, (2) unlawfully disclaiming express and implied warranties, and (3) negligence. The trial court adjudicated each of the consumer's nine causes of action on the directed verdict motion without specifically addressing the Magnuson–Moss claims.

■ Generally, errors which arise during the course of a trial and which are not brought to the attention of the court by objection or otherwise are waived and may not be raised on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630. Here, while the consumer filed a multitude of motions during the pendency of the counterclaim, including motions for a judgment notwithstanding the verdict and for a new trial, he failed to challenge the trial court's failure to specifically address his federal claims. Accordingly, he has waived his right to claim error on appeal where he failed to afford the trial court the opportunity to correct the alleged defect.

We further note that the trial court substantively adjudicated his federal claims in finding that the dealership (1) performed as required under the service agreement, (2) made no express or implied warranties of the vehicle, and (3) failed to act in a negligent manner.

The consumer's first assignment of error lacks merit.

### III

The consumer, in his remaining five assignments of error, challenges the trial court's granting of the defendants' directed verdict motion.

Civ.R. 50(A)(1) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ The consumer, in his second assignment of error, claims that the trial court erred in granting the defendants' motion because his exhibits conclusively establish that the dealership charged him for a repair covered by his service agreement.

The service agreement defines as a "covered system" the "charging system," which specifically includes the following individual parts: "generator and voltage regulator." One of the consumer's repair bills, which he submitted as evidence, shows that the dealership charged him $46 for the replacement of an "alternator" during the effective term of the service agreement. The consumer argues that these exhibits conclusively establish that the dealership charged him for a covered repair.

The trial court, in addressing this issue, stated:

"Second issue is the breach of service agreement. There is not one bit of evidence in this case that there were repairs made, and that [the dealership and/or the manufacturer] made the plaintiff pay for those repairs, even though those repairs were contained in the value protection plan. The only evidence there is that the plaintiff had to pay for anything was forty-six dollars, I believe, and twenty-three cents. Again, there is no proof whatsoever that that $46.23 should have been covered by the value protection plan."

■ On this record, it appears that the consumer failed to present any evidence establishing that the replacement of his automobile's alternator constitutes a covered charging system repair or the replacement of a covered part. The consumer presumes that this fact is self-evident from the face of his exhibits while the contrary is true. A trial court properly directs a verdict where the plaintiff fails to produce some evidence upon any element essential to establishing liability. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. Here, the consumer failed to produce some evidence establishing that the repair was covered under the service agreement. Accordingly, we overrule the consumer's second assignment of error.

■ The consumer, in his third assignment of error, claims that the dealer's certification to the manufacturer that the automobile had been inspected and reconditioned constituted an express warranty for his benefit pursuant to R.C. 1302.26. The manufacturer required this certification by the dealer prior to extending coverage to used vehicles under its service plans.

In order for the dealer's certification to become an express warranty to the benefit of the consumer, it must have (1) been communicated to consumer at the time of the transaction, and (2) become part of the basis of the bargain. See, generally, R.C. 1302.26. Despite the consumer's claims to the contrary, there is no evidence in the record that the consumer was aware of the dealer's certification at the time of the agreement or that he relied in any way on that document. The document itself clearly constitutes paperwork between the dealer and the manufacturer. Further, the record suggests that the consumer first became aware of the certification during discovery after the fact. Since there is no evidence that the dealership certification became an express warranty by operation of R.C. 1302.26, we overrule the consumer's third assignment of error.

The consumer, in his fourth assignment of error, argues that the defendants breached the automobile's express warranties. As explained above, the dealership's reconditioning certification did not constitute an express warranty. Thus, the only applicable express warranty would be the service agreement. In this respect, the trial court found that the dealership had made and

paid for all covered repairs. Absent a complete trial transcript we cannot dispute the trial court's factual findings. The consumer's fourth assignment of error lacks merit.

■ The consumer, in his remaining two assignments of error, argues that jury issues exist as to whether the defendants engaged in "unfair or deceptive sales practices" as defined under R.C. 1345.02(B)(1) and (2). Those relevant sections provide:

"(B) * * * [T]he act or practice of a supplier in representing any of the following is deceptive:

"(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

"(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not[.]"

In this case, the dealer made only one representation to the consumer. The dealership's salesperson told the consumer that the automobile was in "A–1 condition." However, at trial, the consumer testified that he did not believe or trust the salesperson. Accordingly, he refused to purchase the car "as is" and insisted on the inclusion of the service agreement.

The salesperson's representations here did not constitute a deceptive trade practice in light of the fact that the car (1) was five years old, (2) had been driven over 60,000 miles, and (3) did not require significant repairs, aside from those related to the theft of the vehicle, until seven months after purchase. Cf. *Clayton v. McCary* (N.D.Ohio 1976), 426 F.Supp. 248, 259–260.

Accordingly, we overrule the consumer's fifth and sixth assignments of error.

### IV

The dealership, in its three assignments of error, argues that the trial court erred in finding for the consumer on its counterclaim for abuse of process and attorney fees pursuant to R.C. 1345.09(F)(1) and 4165.03.

■ Generally, a reviewing court will not reverse a trial court's judgment which has support from competent, credible evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276. The weight and credibility of the evidence are issues to be resolved by the trial court when it acts as the trier of fact. *Id.* Further, the allowance of attorney fees is a matter left to the sound discretion of the trial court. See R.C. 1345.09(F)(1); R.C. 4165.03; cf. *Cesare v. Work* (1987), 36

Ohio App.3d 26, 29, 520 N.E.2d 586, 591 (construing R.C. 4165.03). Accordingly, this court affirms the trial court's judgment denying attorney fees absent a showing that the trial court acted unreasonably, arbitrarily, or unconscionably. Cf. *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

In this case there is no evidence in the record that the consumer acted with the intent necessary in order for the dealership to obtain relief under its counterclaim. "The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law." *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11, 16 OBR 9, 11, 474 N.E.2d 357, 361. A defendant in a consumer sales action may recover attorney fees upon proof that the consumer institutes or maintained a groundless action in bad faith. R.C. 1345.09(F)(1). Similarly, a defendant in a deceptive trade practices action may recover attorney fees upon proof that the consumer knowingly brought a groundless action. R.C. 4165.03.

Here, while the consumer may well have acted ill-advisedly, there is no evidence that his action was motivated by malice or bad faith. Nor is there evidence that he instituted the action knowing that it was groundless. The dealership in its brief refers to matters outside of the record in support of its assigned errors. However, we cannot properly consider those allegations in determining this appeal. App.R. 9(A).

We overrule the dealership's three assigned errors and affirm the trial court's judgment.

*Judgment affirmed.*

PATTON, J., concurs.

KRUPANSKY, J., concurs in judgment only.