**KURINSKY, d.b.a. Arcade Sound, Appellant,**

**v.**

**NATIONAL CABLE TELEVISION ASSOCIATION et al., Appellees.**

[Cite as *Kurinsky v. Natl. Cable Television Assn.* (1994), 98 Ohio App.3d 716.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66143.

Decided Nov. 14, 1994.

718

*Berkman, Gordon, Murray, Palda & DeVan, Larry S. Gordon* and *George W. Palda,* for appellant.

*Vorys, Sater, Seymour & Pease, Matthew J. Hatchadorian* and *Chris Bator; Hogan & Hartson, Gardner F. Gillespie* and *James J. Moore,* for appellees.

JAMES D. SWEENEY, Presiding Judge.

Plaintiff-appellant Andrew C. Kurinsky, Jr., d.b.a. Arcade Sound, appeals the trial court's decision granting the motion for summary judgment filed by the

defendants-appellees National Cable Television Association ("NCTA") and James S. Allen. Allen was the Director of the Office of Cable Signal Theft of the NCTA. This suit was originally filed on August 29, 1991, under the theories of malicious prosecution and abuse of process. Pursuant to Civ.R. 41(A)(1), the case was dismissed on February 24, 1992. The appellant refiled the action on February 18, 1993, asserting the theory of abuse of process. It is from the final order on the second action that the appellant appeals.

On February 19, 1993, the appellant filed an amended complaint that included an affidavit inadvertently omitted from the original complaint. The complaint alleges that the appellant is in the business of manufacturing, recycling, repairing, and distributing cable television equipment. Appellee NCTA is an unincorporated trade association that represents and acts in the interest of multi-system cable television operators and major cable equipment manufacturers throughout the United States.

The complaint asserts that the appellant sells equipment for use in cable television systems to distributors. The distributors in turn offer the equipment to cable television subscribers for use as replacements for primary equipment or as secondary equipment on cable television systems. In effect, the appellant is in direct competition with the multi-system operators who are represented by appellee NCTA.

The complaint alleges that on March 27, 1989, Special Agent Ramsak of the Federal Bureau of Investigation sought to obtain a search warrant for the appellant's premises from a magistrate of the United States District Court for the Northern District of Ohio. Towards this end, Ramsak included in his affidavit a statement made to him by James Allen. The appellant asserts that the statement made by Allen was a materially false statement, without which the magistrate would not have issued the search warrant. The appellant states that at the time Allen made the statement to Ramsak he knew the statement was false.

The search warrant was issued and executed on March 29, 1989. A substantial portion of the appellant's inventory, equipment, and business records were seized. Following the seizure, the appellant's ability to operate his business was greatly impaired. In addition, the NCTA obtained possession of the business records and disseminated the information to its members. The information was used by the members to harm the appellant's business operations. The appellant alleges that the appellee sought to eliminate competition for its members, and that as a result he suffered embarrassment, humiliation, and emotional distress; that he was deprived of inventory, equipment, and business records for over a year, and that a substantial portion was returned in a damaged condition; that other

property was not returned; and that he suffered and continues to suffer a substantial economic loss.

The appellees filed a motion to dismiss or for summary judgment. The appellees first asserted that the statute of limitations for abuse of process is one year and that the suit was untimely filed; second, the appellee asserted that the appellant failed to establish the elements of abuse of process. Attached to the motion were the initial complaint, the first motion to dismiss/summary judgment, the voluntary dismissal of the first complaint, various case law and statutes, a letter from the FBI to James Allen, thanking him for his cooperation in the investigation and turning over to him diskettes containing data from the appellant's business operation. The information was sent for the purpose of aiding the NCTA "in identifying and seeking the civil and/or criminal prosecution of cable system end-users, distributors, and others involved in pirate cable television descrambler activity."

Also attached to the motion is the affidavit of James Allen, stating that his office is responsible for assisting the cable industry in preventing loss from cable signal theft and in remedying past instances of piracy; that he received the diskettes from the FBI for the purpose of identifying and seeking prosecution of persons engaged in the illegal interception of cable television signals; that from this information a list was prepared that identified the cable system in the area of the appellant's customer; and that the list was disseminated to the affected cable system and provided solely to enable the system to identify and seek civil or criminal prosecution in accordance with federal law.

The brief in opposition to the motion to dismiss or for summary judgment argues that the claim is timely filed and that a cause of action for abuse of process has been appropriately pled. The appellant supported his brief with his own affidavit, which stated that the allegations in the complaint are true; that he owns and operates Arcade Sound; that Arcade Sound was subject to a search led by Special Agent Ramsak pursuant to a search warrant; that the warrant was supported by an affidavit from Ramsak; that at the time of the search he could not understand the basis of the search; that his records, business equipment, and computers were all confiscated; that no indictment was returned against him; that he witnessed several special agents throwing his equipment into boxes without regard to damage; that the equipment was stored in an outdoor, self-serve ministorage facility that did not protect the equipment from the elements; that as a result of the improper storage the equipment was severely damaged; that he attended meetings with the United States Attorney's Office and presented evidence that his business was legitimate; that it declined to prosecute; that although he was told that his property would be returned, to date some of it has not been; that his computer records were changed during the period of time they

were held by the FBI, damaging their integrity and the business; that more than fifty percent of the records seized from the filing cabinets have not been returned; that the information from the computer was distributed to the NCTA, which incorrectly analyzed the information and then distributed it throughout the country; and that this activity occurred both prior to and subsequent to the government's determination not to prosecute. Attached to the affidavit is the letter to the appellant from Dan Polster, the United States Attorney assigned to the file, dated August 30, 1990, which confirmed that the government would not prosecute.

The affidavit of O.D. Page, a professional engineer, was attached to the appellant's brief in opposition to the motion to dismiss or for summary judgment. Page affirmed his credentials and that he reviewed the Ramsak affidavit which secured the search warrant. He rebutted the statement of Allen contained in the Ramsak affidavit, stating that there are legitimate uses for the descramblers and that it could not be inferred from the data available that the appellant had knowledge of the end use of the descramblers.

The appellant submitted as evidence the affidavit of Ramsak, which was attached to the application for the search warrant, and an affidavit from United States Attorney Polster, stating that the last time evidence pertaining to the appellant was submitted to the grand jury was November 29, 1989.

Also attached was a letter from TCI Cablevision of Pasco County to Jerry Klein which stated that TCI was aware that Klein purchased a decoder from Arcade Sound; that the business of Arcade Sound was distribution of illegal cable television decoders; that Arcade Sound was out of business and the records were turned over to TCI; that Klein's name was part of the records; that the use of the decoder was in violation of the law; and that if the decoder was voluntarily surrendered TCI would waive any monies owing as a result of illegal interception of service, but that failure to voluntarily surrender the decoder would result in legal action. The appellant also attached various case law and statutes. A reply brief and a surreply brief were also filed.

On August 13, 1993, the trial court granted the motion for summary judgment filed by the appellees.

The appellant sets forth two assignments of error:

"I

"The trial court erred in granting defendants' motion for summary judgment, which was premised in part on the ground that plaintiff's action for abuse of process was barred by the one-year statute of limitations set forth in Revised Code Section 2305.11. (*See Judgment Entry*).

*"II*

"The trial court erred in granting defendants' motion for summary judgment, which was premised in part on the ground that plaintiff's amended complaint failed to state a cause of action for abuse of process, or that the record failed to establish a claim for abuse of process. (*See Judgment Entry* )."

After the appellant filed this appeal, and after both parties provided this court with briefs, the Supreme Court, in *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, unequivocally announced the statute of limitations applicable to the tort of abuse of process and pronounced the elements of the tort.

██ At paragraph three of the syllabus, the court announced that an action for abuse of process is governed by the four-year limitations period of R.C. 2305.09. In the case *sub judice,* the actions complained of began in March 1989, and appellant first filed suit on August 29, 1991, well within the four-year limit. Accordingly, appellant timely filed his action for abuse of process.

In *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–341, 617 N.E.2d 1123, 1126–1127, the Supreme Court reiterated the standard for reviewing a motion for summary judgment:

"Pursuant to Civ.R. 56(C), summary judgment is appropriately rendered when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Accord *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

"Because summary judgment represents a shortcut through the normal litigation process by avoiding a trial, 'the burden of establishing that the *material* facts are not in dispute and that no *genuine* issue of fact exists is on the party moving for the summary judgment.' (Emphasis added.) *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1114.

" \* \* \*

"In deciding whether an evidentiary conflict exists so as to preclude summary judgment, a trial court must adhere to Civ.R. 56(C) and view the record in the light most favorable to the party opposing the motion. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 138, 522 N.E.2d 477, 480. Even the inferences to be drawn from the underlying facts contained in the affidavits and

depositions must be construed in the nonmoving party's favor. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315."

In *Yaklevich, supra,* 68 Ohio St.3d at 296–298, 626 N.E.2d at 117–118, the court distinguished abuse of process from malicious civil prosecution:

"Although a claim for malicious civil prosecution is not directly at issue, the nature of this case requires us to conduct an examination of certain aspects of a malicious civil prosecution claim in order to compare and contrast that tort with the related, but separate, tort of abuse of process.

"I

"Elements of Abuse of Process

" 'Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm.' *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 144, 559 N.E.2d 732, 734, citing *Pope v. Pollock* (1889), 46 Ohio St. 367, 368–371, 21 N.E. 356, 356–357. In *Trussell,* this court examined the development of case law in Ohio setting forth the elements of the tort of malicious criminal prosecution, contrasting the elements of that tort with the elements of the tort of malicious civil prosecution. The *Trussell* court, applying paragraph one of the syllabus of *Rogers v. Barbera* (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162, observed: 'The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.' *Trussell, supra,* at syllabus.

"As was noted by the *Trussell* court, the elements of the tort of malicious civil prosecution were set forth in *Crawford v. Euclid Natl. Bank* (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 344, 483 N.E.2d 1168, 1171: ' "(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *." ' (Citations omitted.)

"The tort of malicious prosecution, whether criminal or civil, provides a remedy when a proceeding is instituted without probable cause. However, it does not provide a remedy for a related, yet different situation. The tort action termed 'abuse of process' has developed for 'cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.' Prosser & Keeton, The Law of Torts (5 Ed.1984) 897,

Section 121. We accept the proposition that the tort of malicious civil prosecution does not provide a remedy for a situation in which process is used to accomplish an improper ulterior purpose. Such a situation occurs when there is an 'act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process * * *.' *Id.* at 898. Accordingly, we recognize the tort of abuse of process as a distinct tort in its own right, distinguishable from the tort of malicious civil prosecution. See *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 16 OBR 9, 474 N.E.2d 357; *Avco Delta Corp. v. Walker* (1969), 22 Ohio App.2d 61, 51 O.O.2d 122, 258 N.E.2d 254.

"Having determined that Ohio recognizes the tort of abuse of process, we now address the elements of the tort. We hold that the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

"Even though the tort of malicious prosecution and the tort of abuse of process have different elements, in some situations the same facts which may constitute an abuse of process may also support an action for malicious prosecution. In that case, a complaint could allege both causes of action, in separate counts. In such a situation, a consideration of whether probable cause was present to bring the underlying litigation would be the key to determining under which tort theory the action should proceed." (Footnotes omitted.)

In the case *sub judice*, the most difficult element to resolve is the first. Although there is no question that a legal proceeding, in the form of the execution of a search warrant, was set in motion, and in proper form, neither party has addressed the issue of the requirements for probable cause for the execution of a search warrant.

■ The appellant argues that the appellee knowingly gave false information to the FBI in order that it might secure a search warrant and that the fact that the appellee provided the FBI with knowingly false information is evidence of the appellee's ulterior motive. The appellee does not argue that this allegedly false statement was, in fact, true, but instead argues that a falsely procured search warrant is an element of malicious prosecution, not of abuse of process. There has been no determination by the trial court whether there was probable cause for a search warrant absent the appellee's statement.

■ Under the plenary powers of this court, however, we elect to consider this issue. See *Bressan v. Secura Ins. Co.* (Apr. 28, 1994), Cuyahoga App. No. 64997, unreported, 1994 WL 163996, where this court noted that an appellate court reviews the lower court's granting of summary judgment *de novo*. See, also,

*Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158. An appellate court reviews the summary judgment in accordance with the standards set forth in Civ.R. 56(C). *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26.

 Probable cause is the level of suspicion required to justify certain governmental intrusions upon interests protected by the Fourth Amendment. The existence of probable cause must be determined by an analysis of the "totality of the circumstances" surrounding the intrusion. See *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 544. As a general rule, probable cause for a search or seizure is required whether or not police obtain a warrant. *Carroll v. United States* (1925), 267 U.S. 132, 155–156, 45 S.Ct. 280, 285–286, 69 L.Ed. 543, 552–553. An impartial judicial officer must assess whether the police have probable cause to conduct a search. *Warden v. Hayden* (1967), 387 U.S. 294, 301–302, 87 S.Ct. 1642, 1647–1648, 18 L.Ed.2d 782, 788–789. The magistrate must consider the facts and circumstances in a practical, common-sense manner. The evidence must provide the magistrate with a "substantial basis" for the determination. And finally, the reviewing court must accord great deference to the judgment of the magistrate. *Gates, supra.* Generally, see, also, the *Twenty–Third Annual Review of Criminal Procedure: United States Supreme Court and Court of Appeals 1992–1993* (Mar.–Apr. 1994), 82 Geo.L.J., at 602–622.

A close reading of the affidavit submitted by Special Agent Ramsak to the federal magistrate shows that absent the allegedly untrue statements made to Ramsak by Allen, the federal magistrate would have found probable cause to have issued the search warrant on the appellant's place of business. Ramsak detailed for the magistrate how the course of his investigation had uncovered distributors with whom the appellant conducted business, and the fact that these distributors were in violation of the federal law.

For example, Ramsak affirmed that a prior investigation in Newark, New Jersey, was conducted by Special Agent Kahrer. As a result of that investigation, Arthur Kaufman pled guilty to mail fraud and tax evasion. Kaufman had been engaged in selling descramblers to individual cable televisions subscribers, which enabled the individual to view scrambled signals from the cable television system. Two thirds of Kaufman's descramblers were from Arcade Sound. Arcade Sound also performed any necessary repairs to the units.

In addition, Ramsak affirmed that Ronald Putnam, Director of Security for General Instrument Corporation, informed him that Arcade Sound is not an authorized distributor or repair facility for its Jerrold descramblers, and that Putnam identified several items from the Arcade Sound statements which were Jerrold products.

Ramsak also detailed for the federal magistrate a series of wire transfers of payments for the descramblers, bank account and balances, and evidence of shipment of descramblers through United Parcel Service.

Applying the standards set forth above, we find that this evidence was a sufficient basis upon which to establish probable cause, and an impartial federal magistrate could have issued a search warrant. The appellant has established the first prong of the three-part test for abuse of process articulated in *Yaklevich, supra.*

■ The appellant has also established that a question of fact exists on the second element of abuse of process. When viewing the evidence most strongly in favor of the appellant, as required under Civ.R. 56(C), and *Turner, supra,* the appellant's affidavit establishes that the appellee attempted to pervert the legal process with the ulterior motive of disrupting and ruining the successful business of a competitor. The appellees presented evidence by way of affidavit that they were merely trying to aid the FBI in enforcing federal law. This issue of fact requires this court to reverse and remand this case to the trial court for further consideration. The third element of the tort, that direct damages resulted from the wrongful use of process, has not been contested by the appellees.

The appellant's first and second assignments of error are well taken.

*Judgment reversed
and cause remanded.*

MATIA, J., concurs.

KRUPANSKY, J., dissents.

KRUPANSKY, Judge, dissenting.

I respectfully dissent from the majority opinion since appellees were clearly entitled to summary judgment as a matter of law. In addition, although a genuine issue of fact existed, *viz.*, whether or not the actions of appellees were directed toward the accomplishment of an ulterior purpose, the issue was not a genuine issue of *material* fact but was, rather, irrelevant to resolution of the case *sub judice.*

In *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 297–298, 626 N.E.2d 115, 117–118, the Supreme Court defined the tort of "abuse of process" stating in relevant part as follows:

" * * * The tort action termed 'abuse of process' has developed for 'cases in which *legal procedure* has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless *has been perverted* to accomplish an ulterior purpose for which it was not designed.' * * *

" * * * We hold that the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that *the proceeding has been perverted* to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." (Emphasis added and footnotes omitted.)

In *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11, 16 OBR 9, 11–12, 474 N.E.2d 357, 361–362, the court elaborated on the first two elements of the tort of abuse of process which must be demonstrated in order to establish a *prima facie* case of abuse of process. In its discourse, the *Clermont* court made it quite clear that a defendant must *use* process before that defendant can *abuse* process as evidenced by the following statements:

" * * * The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law. * * * Abuse of process does not lie for the wrongful bringing of an action, but for the improper *use,* or 'abuse,' *of process. * * *

"To make a case of abuse of process a claimant must show that *one used process* with an 'ulterior motive,' * * *. There must also be shown *a further act in the use of process* not proper in the regular conduct of the proceeding. * * * In a claim for abuse of process:

" ' " * * * The tortious character of *the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner,* and this point must be clearly shown by the plaintiff to entitle him [to] maintain his action." ' " (Emphasis added and citations omitted.) See *Walker v. Cadillac Motor Car Div.* (1989), 63 Ohio App.3d 220, 578 N.E.2d 524; *Avco Delta Corp. v. Walker* (1969), 22 Ohio App.2d 61, 51 O.O.2d 122, 258 N.E.2d 254.

*Clermont, supra,* is neither inconsistent with nor inapposite to *Yaklevich, supra,* particularly in light of the fact that *Yaklevich, supra,* was premised in part upon *Clermont, supra.* In addition, the *Clermont* court articulated with great specificity the underlying concept which was only implicitly expressed by the *Yaklevich* court with respect to the precise actions which do, in fact, constitute the tort of abuse of process. In accordance with *Yaklevich, supra,* and *Clermont, supra,* it must be demonstrated that the precise actions of the defendant constituted the *use* of process which *use* of process perverted the legal proceeding in an attempt to accomplish the defendant's ulterior purpose. Simply stated, one cannot *abuse* process if one does not actually *use* process.

In the case *sub judice,* Kurinsky failed to establish a *prima facie* case of abuse of process for the simple reason that Kurinsky failed to demonstrate appellees actually *used* process. Restated, in accordance with the foregoing language of

*Clermont, supra,* and in harmony with *Yaklevich, supra,* since appellees did not *use* process against appellant, appellees cannot be found to have *abused* process with respect to appellant. See *Cadillac, supra; Avco, supra.*

The term "process" is defined in Black's Law Dictionary (5 Ed.1983) 630, in relevant part as follows:

"Any means used by [a] court to acquire or exercise its jurisdiction over a person or over specific property. *Means whereby [a] court compels appearance of defendant before it or a compliance with its demands.*" (Emphasis added.)

Ohio Civ.R. 4 through 4.6 and R.C. Chapter 2703 provide for the institution, *i.e., use* of process. Civ.R. 4 states in relevant part as follows:

"(A) Summons: issuance. *Upon the filing of the complaint* the clerk shall forthwith issue a summons for service [of process] upon each defendant listed in the caption." (Emphasis added.)

In the case *sub judice,* it was undisputed that the FBI secured a warrant to search Arcade Sound from a federal magistrate and did, in fact, execute that search warrant against Arcade Sound. Upon execution of the search warrant, the FBI confiscated inventory, business equipment and business records belonging to Kurinsky. However, it was also undisputed that neither NCTA nor Allen was an employee or agent of the FBI. In addition, neither NCTA nor Allen initiated the FBI's investigation of Kurinsky or, by themselves, commenced any legal proceeding, *i.e., used* process against Kurinsky. Restated, appellees filed no complaint or otherwise requested the federal magistrate to compel Kurinsky's compliance as the use of process is defined in Civ.R. 4(A), *supra,* and Black's, *supra.*

Specifically, the record before this appellate court demonstrated clearly that in February 1988, FBI Special Agent Joseph L. Ramsak of the Cleveland, Ohio office of the FBI was *assigned* to investigate the business activities of Kurinsky, d.b.a. Arcade Sound. The FBI, *relying upon an informant's tip which emanated from a plea bargain,* sought to determine whether probable cause existed to indict Kurinsky on charges of manufacturing, repairing or supplying unauthorized cable television decoder devices ("descramblers") in violation of Sections 553 and 605, Title 47, U.S.Code.

During his investigation, Ramsak, desiring to learn more about cable "piracy," contacted NCTA in Washington, D.C., which is the principal trade association for cable television system operators, cable programmers and equipment manufacturers. Thereafter, Allen, who was Executive Director of NCTA's Office of Cable Signal Theft, assisted Ramsak to understand the nature of cable piracy and the use of descramblers to implement cable piracy. Following completion of his entire investigation, Ramsak prepared a sworn affidavit regarding his investiga-

tion of Kurinsky which Ramsak submitted to his superior, Assistant United States Attorney Dan Polster ("Polster").

Ramsak's affidavit, which was seventeen pages in length, contained a detailed analysis of his findings and recommended the FBI obtain a warrant to search Arcade Sound. In his affidavit, Ramsak stated in relevant part as follows:

"10. On March 14, 1988, and/or March 27, 1989, James S. Allen, Director, Office of Cable Signal Theft, National Cable Television Association, Washington, D.C., advised there is *no other purpose for a descrambler* but to decode encrypted Cable Television signals to enable the user to watch 'premium' cable television channels such as Home Box Office, Showtime, and etc. without paying the additional monthly fee for these channels." (Emphasis in original.)

In addition, Ramsak distinguished in his affidavit between the use of authorized *versus* unauthorized descramblers as follows:

"Additionally, ALLEN advised the descrambler industry uses certain controlling practices to limit access to and restrict unauthorized use of the descramblers. He noted the following practices: * * *

"B. Manufacturers in the United States will usually have only one or two:

"I. Authorized descrambler repair facilities.

"II. Authorized descrambler distributors or brokers.

"C. The cable television companies buy the descramblers directly from the manufacturers." (Emphasis in original.)

Based upon the foregoing facts contained in the within record, it is clear that the only role NCTA and Allen played in the process *used* in the case *sub judice* was that of expert witnesses at the express request of the FBI. Clearly, appellees did no more than provide, as expert witnesses, general information about cable piracy to the FBI which information contained no specific references to Kurinsky or Arcade Sound. At this point, the FBI clearly was free to use or not use this information or to seek other advice. Thus, while the FBI perhaps *used* process in the case *sub judice,* neither NCTA nor Allen *used* process as the *use* of process is defined in Civ.R. 4(A), *supra,* and in Black's, *supra.*

The majority opinion itself concurs with the fact that only the FBI instituted the investigation and secured the warrant to search Arcade Sound *without prompting by appellees and without reliance upon the testimony of appellees.* In fact, the majority opinion concludes the FBI possessed probable cause to search Arcade Sound *absent the inclusion of appellees' testimony in its affidavit* and states in relevant part as follows:

"A close reading of the affidavit submitted by Special Agent Ramsak to the federal magistrate shows that *absent the allegedly untrue statements made to*

*Ramsak by Allen, the federal magistrate would have found probable cause to have issued the search warrant on the appellant's place of business.* Ramsak detailed for the magistrate how the course of his investigation had uncovered distributors with whom the appellant conducted business, and the fact that these distributors were in violation of the federal law." (Emphasis added.)

In addition, the factual scenarios of *Yaklevich, supra,* upon which the majority relies, as well as *Clermont, supra, Cadillac, supra,* and *Avco, supra,* clearly involved actions for abuse of process brought by plaintiffs who, prior to instituting the action for abuse of process, had themselves been the subject of legal proceedings commenced by the defendants in the respective abuse of process actions. Restated, there is nothing in Ohio case law demonstrating that a plaintiff has ever successfully maintained an action for abuse of process against a defendant who did not, in fact, *use* process as defined in Civ.R. 4(A), *supra,* and in Black's, *supra,* against that plaintiff. Clearly, in order to establish a *prima facie* case of abuse of process against a defendant, a plaintiff must demonstrate that the defendant in some form or fashion, at the very minimum, induced another party into *using* process against the plaintiff.

The majority opinion, however, incredulously believes that appellees, by merely providing expert witness testimony to the FBI, *used* process. Merely providing information in the capacity of an expert witness, however, does not constitute the *use* of process. To so hold not only contradicts reason but also undermines the traditional role that expert witnesses play in tort litigation. By its opinion in the case *sub judice,* the majority would irresponsibly grant a cause of action for abuse of process to every unsuccessful, disgruntled litigant who seeks to sue the opposing party's expert witnesses armed with only contradictory expert authority and a claim that the expert witnesses provided false testimony.

Therefore, since Kurinsky failed to establish that appellees actually *used* process, he failed to demonstrate the first element necessary to the establishment of a *prima facie* case of abuse of process, *viz.,* that *appellees* set in motion a legal proceeding in proper form and with probable cause. *Yaklevich, supra; Cadillac, supra; Clermont, supra; Avco, supra.* Appellees, therefore, were entitled to summary judgment as a matter of law.

The majority opinion, nevertheless, concludes that a genuine issue of material fact remained to be litigated, *viz.,* whether or not appellees did the following:

"*[A]ttempted* to pervert the legal process with the ulterior motive of disrupting and ruining the successful business of a competitor." (Emphasis added.)

The majority concludes the foregoing issue implicates the second element which must be demonstrated in order to establish a *prima facie* case of abuse of process. It is noted Kurinsky maintained throughout the proceedings that

NCTA was a competitor of Arcade Sound and that appellees' testimony to the FBI constituted an act intentionally designed to unlawfully stifle competition between NCTA and Arcade Sound.

In *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, the Ohio Supreme Court held that a summary judgment motion forces the nonmoving party to produce timely filed evidence in support of issues for which that party bears the burden of production at trial. Furthermore, in *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295, the court stated the nonmovant must present specific facts and may not rely upon mere unsupported allegations.

In the case *sub judice*, Kurinsky failed to comply with *Wing, supra,* and with *Shaw, supra,* since he provided neither evidence nor specific facts demonstrating that NCTA was a competitor of Arcade Sound. On the contrary, NCTA was a national trade organization the goals of which appear to have included the promotion of fair competition and the prevention of cable piracy. Kurinsky's allegation that NCTA, as a competitor of Arcade Sound, engaged in unfair competition with Arcade Sound was, therefore, a wild, conclusory statement. Since Kurinsky's allegation was unsupported by evidence, Kurinsky could not withstand a summary judgment motion.

In addition, even if Allen's testimony on behalf of NCTA to the FBI, in fact, constituted unfair competition, such unfair competition was irrelevant to determination of the case *sub judice* since Kurinsky failed to demonstrate appellees actually *used* process against Kurinsky. The majority finds the issue of whether or not appellees *attempted* to pervert the legal process with the ulterior motive of disrupting and ruining the successful business of a competitor to be a genuine issue of material fact. However, *Yaklevich, supra,* does not require a demonstration that appellees *attempted* to pervert the proceeding. On the contrary, *Yaklevich, supra,* requires a demonstration that the proceeding *was, in fact, perverted* by appellees in an attempt to accomplish an ulterior purpose. The foregoing issue, thus, is irrelevant to a determination of the case *sub judice.*

More importantly, *Clermont, supra,* clearly requires, in order to satisfy the second element of the tort of abuse of process, a demonstration that appellees engaged in a *further* act in the use of process thus perverting the legal proceeding. In the case *sub judice*, Kurinsky claims on appeal that after the FBI obtained and executed the search warrant against Arcade Sound, appellees testified before the United States Prosecutor and, thereby, engaged in a *further* act in the use of process which constituted an abuse of process. *Clermont, supra.* It was undisputed that three months after the FBI executed the search warrant on Arcade Sound, *i.e.*, on July 7, 1989, Allen travelled to Cleveland, Ohio, where he met with Assistant United States Attorney Polster in person. Allen and

Polster, however, discussed only the cable industry in general, cable piracy and its consequences and the cable industry's efforts to combat piracy.

Such general testimony can hardly be called a *use* of process let alone a *further* act in the use of process even if it were demonstrated that the legal proceeding was perverted by such testimony. Civ.R. 4(A), *supra;* Black's, *supra.* It is simply insufficient to merely demonstrate or allege that the legal proceeding was perverted since *Yaklevich, supra,* and *Clermont, supra,* clearly require a demonstration that the legal proceeding *was in fact perverted by the defendant's use of process.*

Kurinsky also makes reference to the fact that Allen and NCTA received and utilized his three computer diskettes after the United States determined not to prosecute Kurinsky. Kurinsky thereby insinuates Allen and NCTA engaged in a further act in the use of process which constituted an abuse of process. *Clermont, supra.* The record in the case *sub judice,* however, clearly demonstrates that the FBI voluntarily provided Allen and NCTA with Kurinsky's three computer diskettes.

Such acquisition by Allen and NCTA hardly constituted a *use* of process let alone a *further* act in the use of process even if such acquisition perverted the legal proceeding. Once again, Kurinsky failed to demonstrate that the legal proceeding was perverted by appellees' *use* of process. *Clermont, supra; Yaklevich, supra;* Civ.R. 4(A), *supra;* Black's, *supra.*

Thus, by failing to establish that appellees engaged in a *further* act in the use of process, which *use* of process perverted the legal proceeding, Kurinsky also failed to demonstrate the second element necessary to the establishment of a *prima facie* case of abuse of process. *Yaklevich, supra; Clermont, supra.* It therefore follows that since appellant failed to demonstrate appellees *used* process against Kurinsky, the issue of whether or not appellees provided their testimony to the FBI only to disrupt and ruin the successful business of a competitor, Arcade Sound, and, in so doing, *attempted* to pervert the legal proceeding, was an irrelevant issue. Restated, although the issue upon which the majority remands the case *sub judice* was a genuine issue of fact, it was not a genuine issue of *material* fact. Appellees, therefore, were entitled to summary judgment as a matter of law.

In summary, since Kurinsky failed to present evidence in support of the first two elements which must be met in order to establish a *prima facie* case of abuse of process, pursuant to *Yaklevich, supra, Cadillac, supra, Clermont, supra,* and *Avco, supra,* the trial court did not err when it granted appellees' summary judgment motion which argued Kurinsky failed to make a *prima facie* case of abuse of process. Even the outer limits of presumption are not sufficiently

resilient to support a claim of abuse of process against NCTA and Allen when there was no evidence appellees actually *used* process.

The majority in the case *sub judice,* however, authorizes the prosecution of a civil suit against a party who is engaged merely as an expert witness, *i.e.,* against a party who is consulted for an expert opinion and/or perhaps to testify at trial. Should such authorization be allowed to continue under the guise of abuse of process, *e.g.,* in medical malpractice cases, I submit the use of expert witnesses will not only be diminished but also may ultimately become nonexistent. In all practicality, to permit an expert witness to be sued for merely providing an expert opinion would be ludicrous if it were not so absurd.

Based upon the foregoing analysis, I would affirm the trial court's grant of summary judgment to Allen and to NCTA in the case *sub judice* and, therefore, I respectfully dissent from the majority opinion.