OPINION
{¶ 1} Plaintiff-appellant, Alan Williams, appeals from a judgment of the Franklin County Court of Common Pleas dismissing his complaint against defendant-appellee, Marla Barrick. For the following reasons, we affirm.
 {¶ 2} On February 24, 2006, Williams and his son, Shamar Williams, filed a pro se complaint against Barrick for injuries allegedly arising out of Barrick's tenure as the guardian ad litem for Williams' daughter, Lakisha Williams.[1] The complaint asserts claims *Page 2 
for fraud, deceit, negligent misrepresentation, wrongful death, stealing, abuse of process, legal malpractice, malicious prosecution, negligence, interference with family relations and custody, conspiracy, false imprisonment, obstruction of justice, and violations of Section 1983, Title 42, U.S. Code, the Racketeer Influenced and Corrupt Organizations Act, Sections 1961-1968, Title 18, U.S. Code ("RICO"), and the Americans with Disabilities Act, Section 12101 et seq., Title 42, U.S. Code ("ADA").
 {¶ 3} Williams' complaint consists of rambling allegations, making it difficult to decipher the facts underlying his claims. Apparently, Williams lost custody of Lakisha to Franklin County Children Services ("FCCS") because he did not provide Lakisha — who suffered from Rett Syndrome — with proper medical care. During custody proceedings, the trial court appointed Barrick, an employee of the Franklin County Public Defender, as guardian ad litem for Lakisha. At some point, Williams regained custody of Lakisha, only to lose it again. Lakisha died while in the custody of FCCS.
 {¶ 4} In essence, Williams claims that Barrick's indifference to Lakisha's medical needs resulted in her death. Williams also asserts that Barrick lied to the court about Lakisha's medical condition and delayed court proceedings in order to prevent him from regaining custody of Lakisha.
 {¶ 5} Barrick responded to Williams' suit with a motion to dismiss. On January 18, 2008, the trial court issued a decision and judgment entry granting Barrick's motion. The trial court ruled that: (1) as an employee of a political subdivision, Barrick was entitled to immunity under R.C. 2744.03(A)(6); (2) the two-year statute of limitations provided for in R.C. 2744.04(A) barred Williams from asserting his state law claims, with the exception of the wrongful death claim; (3) Barrick was entitled to absolute immunity; *Page 3 
(4) Williams failed to properly plead his RICO and ADA claims; and (5) Williams lacked standing to pursue claims that did not belong to him.
 {¶ 6} Williams now appeals from the January 18, 2008 judgment and assigns the following errors:[2]
 [1.] Did the Trial Court Err in granting dismissal for defendant Marla Barrick on the bases that she should enjoy Absolute Immunity from the Plaintiff State Law Claims, even though she was committed deliberate indifference, was deliberately derelict in her duties, and was outside the scope of her employment. Marla maliciously denied services to the child and refused to communicate with the specialist Dr. Alan Percy as well as other deliberate indifference action upon the child and family
 Even State Law Claims Chapter 2744 present that if (a) the employee acts or omission were manifestly outside the scope of the employees employment or official responsibilities.
 (b) The employee's acts or omission were with malicious purpose, in bad faith, or wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code.
 Even though the above situation did apply to Marla Barrick the Trial Court still went with the option to intentionally use abuse of discretion.
 [*P15] R.C. 2111.50, a court is superior guardian and guardians must obey all orders; determination of ward's best interest, states the following:
 "(A)(1) At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships."
 [2.] Did the trial Court err in granting summary judgment on defendants defense of the claim that the bulk of the plaintiff's *Page 4 
allegations involved events that occurred in March 2003 and than deceptively claiming that the last event was on December 14, 2003 and not on August 27, 2004?
 The Trial Court did commit intentional abuse of discretion claiming that the Wrongful Death of the child was to be subsumed under these claims, thus making it appear as if the plaintiff entire case was subjected to the statue of limitation. None of the claims against the Appellee was subjected to the Statute of Limitation.
 [3.] Did the Trial Court Err in it's decision that the Plaintiff had committed the Unauthorized Practice of Law (U.P.L.)? The Congressional intent was to allow a parent to the advocacy and protection of their under aged children?
 [4.] Did the Trial Court Err in dismissing the Appellants RICO Claim? The Appellant told of different times of different crimes of extortion committed by the Defendant/Appellant Marla Barrick, a whole chain of incidents that were used to trap the Appellant Williams and his child? By threat the plaintiff was seduce to sign his child into the hospital, the State place him under duress to work with the hospital regardless of his lawsuit against them. While in the hospital the plaintiff was threaten that if he did not sign to send his child back to Villa Angela Care Center, he would be accused of attempting to give his child the flu in the hospital. The plaintiff stated ("you can't do that" "the doctor said watch me", the plaintiff said his "daughter is still being tested", the doctor replied "she's ready for discharge" he then turned around and walked out. About an hour later that day the hospital security escorted the plaintiff off the premises while he still maintained custody.
 The Hobbs Act contains its own definition of extortion: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(B)(2). In Nardello and Scheidler where we are required to define generic extortion for the purposes of the Travel Act and RICO, both of which leave the term undefined. . we defined it as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threat. Scheidler v. National Org for Women would not defined the case presented in Williams v. Dr. Lo but United States v. Nardello 393 U.S. 286
(agreeing with the Government that *Page 5 
extortion means" obtaining something of value from another with his consent induced by wrongful use of force, fear, or threats"). Marla Barrick supported and worked with the other co-conspirator to secure their conspiracy committed on 12-14-2003 until death.
 [5.] Did the Trial Court Err in considering striking the Appellant Motion to Dismiss through considering it in ruling upon the Motion to dismiss of the Appellee? The Appellant had lost his home as a result of all this undertaking in defending his children and their Constitutional and Civil rights as citizens of the United States?
 [6.] Did the Trial Court Err in subsuming all of the claims of the Plaintiff/Appellant under the professional malpractice for a guardian ad litem, attorney or social workers and not under Conspiracy or Fraud, neither allowing the wrongful death which statute of limitation carries two year for adult possibly four years for a child?
 [7.] Did the Trial Court Err in dismissing Appellants Claim of Wrongful Death claiming that because the Appellant spoke about the history that lead up to the time of death, as cause to dismiss the Wrongful Death Action as well. The Court just did plain error here in dismissing the Wrongful Death Action based up on the time. The child Deceased on August 27, 2004, August of 2006 would have made it two years. The Appellant filed the Wrongful Death Action on February 24, 2006, which still left him with 7 months remaining in which to file before he could be challenged by the bar of the Statute of Limitation. This was simply just plain error?
 [8.] Marla Barrick Functioned as a guardian ad litem not an attorney for the child. Iren Knapp was the prosecuting attorney. Marla Barrick was not similar to a prosecutor in no form or fashion. Again this was just plain Err on the part of Judge David Fais?
 [9.] Did the Trial Court err in dismissing the Appellant Claim of American With Disabilities Act (A.D.A.)?
 [10.] Did the Court abuse discretionary powers when it would not see the Child Lakisha Williams as a Suspect Classification? If no the case itself should have been handled as a Suspect Classification case. *Page 6 
 [11.] Did the Trial Court err when it refused to use liberal Construction with the American With Disabilities Act and the other Claims as well, RICO, Wrongful Death, Abuse of Process, Legal Malpractice, Fraud and Deceit, all the claims of the Appellant?
 [12.] Did the Trial Court Err when it refused to used liberal interpretation in the Case in its entirety?
 [13.] Did the trial court error in dismissing the Appellant claim of Conspiracy as allowed by O.R.C. 2305.09 which has a four year statute?
 [14.] Did the trial Court err in denying the Appellants claim of Fraud by a one year statute of limitation when it has a four year statute of limitation?
 Revised Code § 2305.09 provides the statute of limitations for abuse of process claims: Kurinsky v. National Cable Television Ass'n, 98 Ohio App. 3d 716, 649 N.E.2d 860, 1994 Ohio App. LEXIS 4957 (1994).
 [15.] Did the trial Court err with abuse of discretion in claiming that the Appellants conclusions were unsupported in his Complaint, after the plaintiff did submit evidence to the court, which after doing so, the defendant never submitted any proof of not committing the acts alleged by the Plaintiff? The defendant just claimed immunity as if performing a prosecutorial function.
 [16.] Did the Trial Court err with abuse of discretion to claim that it appeared beyond doubt that the plaintiff/appellant could prove no set of facts entitling him to recovery, which was decided after submitting documents to the court and affidavits?
 [17.] The defendant intentionally dodged service of the Appellants complaint for a year, when the process server approached her she refused the service while working in the court house at 373 South High Street on the fifth floor courtrooms. Service was also left several times on the 12th Floor of the Public Defenders Office. Appellant even left one for the Public Defenders Office who has never responded?
 [18.] Did the trial court error in dismissing the Appellant claim of Abuse of Process as allowed by O.R.C. 2305.09 *Page 7 
which has a four year statute? The appellant explained to the trial court that the
 Appellee did act to deceive the court and never did the defendant reframe from acting as attorney against the witnesses of the Appellant. But did examine and cross examine in the court.
 She did help with the prosecutor in bringing the offer to the appellant to admit to a liability of dependency, by saying that he could not obtain the ventilator equipment for his little girl, Lakisha Williams.
 {¶ 7} Although Barrick never explicitly articulated the ground upon which she sought dismissal, both she and the trial court cited the standard for Civ. R. 12(B)(6). Therefore, we will review the trial court's judgment under the Civ. R. 12(B)(6) standard.
 {¶ 8} Appellate review of a judgment granting a Civ. R. 12(B)(6) motion to dismiss is de novo. Perrysburg Twp. v. Rossford, 103 Ohio St.3d 79,2004-Ohio-4362, at ¶ 5. When reviewing such a judgment, an appellate court must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. Maitland v.Ford Motor Co., 103 Ohio St.3d 463, 2004-Ohio-5717, at ¶ 11. For a defendant to prevail on a Civ. R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief. Cincinnati v. Beretta U.S.A. Corp.,95 Ohio St.3d 416, 2002-Ohio-2480, at ¶ 5; Desenco, Inc. v. Akron (1999),84 Ohio St.3d 535, 538, quoting Vail v. Plain Dealer Publishing Co. (1995),72 Ohio St.3d 279, 280.
 {¶ 9} We will first address Williams' third assignment of error, by which he argues that he has standing to sue upon claims belonging to Lakisha's estate. We disagree.
 {¶ 10} Pursuant to R.C. 2305.21, a decedent's claims for injury survive her death. These survival claims pass to the decedent's estate.Peters v. Columbus Steel Castings *Page 8 Co., 115 Ohio St.3d 134, 2007-Ohio-4787, at ¶ 10-11. Thus, in a survival action, a personal representative of the decedent's estate pursues the decedent's claims for the benefit of her estate. Id.; Perry v.Eagle-Picher Industries, Inc. (1990), 52 Ohio St.3d 168, 169-170. In other words, "a personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate."Hosfelt v. Miller (Nov. 22, 2000), Jefferson App. No. 97-JE-50. Here, the complaint does not allege that Williams is a personal representative of Lakisha's estate. Because he is not standing in Lakisha's shoes, Williams cannot assert the claims of her estate. Therefore, we conclude that the trial court properly dismissed those claims in which Williams sought redress for Lakisha's injuries, including his claims for negligence and false imprisonment, and to the extent it seeks recovery for harm to Lakisha, his claim for violation of the ADA. Accordingly, we overrule Williams' third assignment of error.
 {¶ 11} By Williams' first assignment of error, he argues that the trial court erred in concluding that Barrick was immune from liability for his state law claims. We disagree.
 {¶ 12} "Under Ohio law, a guardian ad litem enjoys absolute immunity from actions arising out of his or her services in that role."Kellogg v. Daulton, Franklin App. No. 06AP-106, 2006-Ohio-4115, at ¶ 8. See, also, Rolfe v. Giusto, Cuyahoga App. No. 87831, 2007-Ohio-78, at ¶ 13 ("[The defendant] enjoys absolute immunity in the performance of his duties as GAL."); Dolan v. Kronenberg (July 22, 1999), Cuyahoga App. No. 76054 ("[I]t is clear that a guardian ad litem enjoys absolute, rather than merely qualified, immunity in his role as a court-appointed functionary charged with representing the interests of minor children in the judicial process."); Penn v. McMonagle (1990), 60 Ohio App.3d 149, syllabus ("A guardian ad litem has absolute immunity from actions arising out *Page 9 
of the performance of duties mandated by his role as advocate for the child in judicial proceedings.").
 {¶ 13} As we recognized in Kellogg, a guardian ad litem must be allowed to act in the best interests of the child without worrying about exposure to future legal action. Id. at ¶ 9. The possibility of later harassment and intimidation from disgruntled parents would severely hamper a guardian ad litem's ability to function appropriately. Id.
 {¶ 14} In the case at bar, Williams' state law claims arise from Barrick's alleged malfeasance in carrying out her duties as Lakisha's guardian ad litem. Williams believes that Barrick wanted to keep his child from him, and that she used her position as guardian ad litem to underhandedly accomplish that goal. Thus, Barrick's alleged, actionable behavior occurred while she acted as Lakisha's guardian. Accordingly, Barrick has absolute immunity from Williams' state law claims, and we overrule Williams' first assignment of error.
 {¶ 15} By Williams' second, sixth, seventh, thirteenth, fourteenth, and eighteenth assignments of error, he argues that the trial court erred in finding that the expiration of the applicable statute of limitations prohibited him from suing upon his state law claims. The trial court relied upon the lapse of the statute of limitations period as a secondary reason to dismiss Williams' state law claims, with the exception of his wrongful death claim. Because we have concluded that the trial court did not err in dismissing those same claims based on another ground (i.e., Barrick's absolute immunity), Williams' second, sixth, seventh, thirteenth, fourteenth, and eighteenth assignments of error are moot. *Page 10 
 {¶ 16} By Williams' fourth assignment of error, he argues that the trial court erred in dismissing his RICO claim. We disagree.
 {¶ 17} Williams' RICO claim is premised upon the allegation that Barrick, in the course of her duties as Lakisha's guardian ad litem, ensured that she and others financially benefited from the wrongful removal of Lakisha from Williams' custody and the provision of deficient care to Lakisha. As we stated above in our discussion of Williams' state law claims, Barrick enjoys absolute immunity for her actions as Lakisha's guardian ad litem. Accordingly, we overrule Williams' fourth assignment of error.
 {¶ 18} By Williams' fifth assignment of error, he argues that the trial court erred in considering whether to strike his "Motion to Dismiss Defendants Motion to Dismiss." We disagree.
 {¶ 19} Instead of filing a memorandum contra in response to Barrick's motion to dismiss, Williams filed a motion entitled "Motion to Dismiss Defendants Motion to Dismiss." Barrick moved to strike Williams' motion because: (1) Williams filed it nearly four months after the deadline for filing a memorandum contra, and (2) it exceeded the 15-page limit for memoranda. Recognizing that striking Williams' motion would deprive him of the chance to defend his action, the trial court refused to strike the motion.
 {¶ 20} Now, on appeal, Williams maintains that the trial court erred in even considering whether to strike his motion. Inexplicably, Williams connects the trial court's consideration of Barrick's motion to strike with the loss of his home. Initially, we note that mere consideration of Barrick's motion did not result in any harm to Williams, much less the loss of his home. More importantly, we cannot find that the trial court erred in fulfilling *Page 11 
its responsibility to consider and rule upon a motion pending before it. Accordingly, we overrule Williams' fifth assignment of error.
 {¶ 21} We next review Williams' eighth assignment of error, by which he argues that the trial court erred in concluding that Barrick was a prosecuting attorney. In asserting this assignment of error, Williams misinterprets the trial court's decision. Relying upon Kurzawa v.Mueller (C.A.6, 1984), 732 F.2d 1456, the trial court held that government employees who are involved in the prosecution of child neglect and dependency complaints are entitled to absolute immunity. The trial court found that Barrick fit within this category of government employees, and thus, it ruled that she had immunity from liability for Williams' Section 1983 claims. The trial court did not mistake Barrick for a prosecuting attorney, but rather, properly afforded her the protection of absolute immunity because she acted as Lakisha's guardian ad litem. Because the trial court did not commit the error Williams now complains of, we overrule Williams' eighth assignment of error.
 {¶ 22} By Williams' ninth assignment of error, he argues that the trial court erred in dismissing his ADA claim. We disagree.
 {¶ 23} The complaint is devoid of any factual support for the ADA claim other than the bare allegation that Barrick undertook "discriminatory actions" that injured Williams.[3] In order to prove a violation of Section 12182, Title 42, U.S. Code, a plaintiff must prove discrimination "on the basis of disability in the full and equal enjoyment of the goods, *Page 12 
services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Williams alleged no facts establishing that he had a disability, that Barrick denied him the full and equal enjoyment of a place of public accommodation, or that Barrick owned, leased, or operated a place of public accommodation. Accordingly, we conclude that the trial court properly dismissed Williams' ADA claim, and we overrule his ninth assignment of error.
 {¶ 24} We next address Williams' tenth, eleventh, and twelfth assignments of error. Frankly, we do not understand how the errors asserted in these assignments relate to the trial court's judgment. As the party asserting error, Williams bears the burden of affirmatively demonstrating that error. State ex rel. Petro v. Gold,166 Ohio App.3d 371, 2006-Ohio-943, at ¶ 94. Although appellate courts typically afford some leniency to pro se appeals, they cannot "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning." State ex rel Karmasu v. late (1992), 83 Ohio App.3d 199,206. "If a court cannot understand the arguments advanced by a party, relief cannot be granted." State v. Dunlap, Franklin App. No. 05AP-260,2005-Ohio-6754, at ¶ 10.
 {¶ 25} In the case at bar, Williams' tenth assignment of error asserts that the trial court erred in not designating Lakisha as a "suspect classification." In his eleventh and twelfth assignments of error, Williams argues that the trial court erred in not using "liberal Construction" and "liberal interpretation." Since the legal concepts advanced in these assignments of error are irrelevant to the trial court's judgment, we find that the trial court did not err in not addressing them. Accordingly, we overrule Williams' tenth, eleventh, and twelfth assignments of error. *Page 13 
 {¶ 26} We next consider Williams' fifteenth and sixteenth assignments of error, by which he appears to argue that the trial court erred in not considering the documents he attached to his "Motion to Dismiss Defendants Motion to Dismiss." When ruling upon a Civ. R. 12(B)(6) dismissal motion, a trial court's review is limited to the allegations contained in the complaint, and the trial court may not consider any outside evidentiary materials. Washington Mut. Bank v. Beatley, Franklin App. No. 06AP-1189, 2008-Ohio-1679, at ¶ 13. Consequently, the trial court properly ignored the materials attached to Williams'"motion" when ruling upon Barrick's Civ. R. 12(B)(6) dismissal motion. Accordingly, we overrule Williams' fifteenth and sixteenth assignments of error.
 {¶ 27} We next review Williams' seventeenth assignment of error, by which he does not actually assert any error committed by the trial court. Instead, Williams only complains that Barrick intentionally dodged service of his complaint. Without any error to review, we overrule Williams' seventeenth assignment of error.
 {¶ 28} As a final matter, we note that Williams' brief contains arguments that are not connected to any assignment of error. Pursuant to Civ. R. 12(A)(1)(b), appellate courts "determine [an] appeal on its merits on the assignments of error set forth in the briefs under App. R. 16 * * *." Thus, this court rules on assignments of error only, and will not address mere arguments. In the Matter of the Estate of Taris, Franklin App. No. 04AP-1264, 2005-Ohio-1516, at ¶ 5. Accordingly, we refuse to consider the arguments in Williams' brief that do not correspond with an assignment of error.
 {¶ 29} For the foregoing reasons, we overrule Williams' first, third, fourth, fifth, eighth, ninth, tenth, eleventh, twelfth, fifteenth, sixteenth, and seventeenth assignments of error. We find that Williams' second, sixth, seventh, thirteenth, fourteenth, and eighteenth *Page 14 
assignments of error are moot. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGRATH, P.J., and BRYANT, J., concurs.
[1] Although both Williams and his son were plaintiffs in this action, only Williams appealed the dismissal of the complaint.
[2] We quote Williams' assignments of error without making any spelling, punctuation, or grammatical corrections.
[3] Given the paucity of factual support for this claim, we cannot discern whether Barrick's alleged "discriminatory actions" occurred during the course of her duties as a guardian ad litem. Giving Williams the benefit of the doubt, we will assume that they did not. *Page 1