[Cite as *Price v. Evans Automotive Repair, Inc*, 2024-Ohio-5108.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Stephen Price et al., | : | |
| Plaintiffs-Appellants/<br>Cross-Appellees, | : | No. 23AP-401 |
| v. | : | (C.P.C. No. 18CV-2081) |
| Evans Automotive Repair, Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellee/<br>Cross-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on October 24, 2024

**On brief:** *Doucet Co., LPA*, *Troy J. Doucet* and *Caleb J.* Johnson, for appellants/cross-appellees, Stephen and Natalie Price. **Argued:** *Troy J. Doucet*.

**On brief:** *Campbell Perry, LLC*, and *Jeffrey T. Perry*; *Mancuso Law Office*, and *Anthony O. Mancuso*, for appellee/cross-appellant Evans Automotive Repair, Inc. **Argued:** *Anthony O. Mancuso*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiffs-appellants, Stephen and Natalie Price, appeal from the October 12, 2021 judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Evans Automotive Repair, Inc. ("EAR") on certain of the Prices' claims brought pursuant to Ohio's Consumer Sales Practices Act ("CSPA") and/or certain sections of the Ohio Administrative Code pertaining to consumer transactions.

{¶ 2}   Additionally, EAR cross-appeals from the June 14, 2023 post-trial judgment entry granting the Prices' motion for judgment on EAR's claim for an award of attorney fees under R.C. 1345.09(F)(1).

{¶ 3}   For the following reasons, we affirm the judgments of the trial court as to both the appeal and the cross-appeal.

## I.   Facts and Procedural Background

{¶ 4}   This case arose out of a dispute involving approximately $4,000 in car repairs made by EAR to the engine of a 2008 BMW Mini Cooper owned by appellants Stephen Price ("Stephen") and his daughter, Natalie Price ("Natalie") (collectively, the "Prices") in December 2017 and January 2018.  It was (apparently) contentiously litigated for almost four years, including briefing two sets of cross-motions for summary judgment.  In February 2022 the case proceeded to a jury trial on the claims and counterclaims remaining after the summary judgment stage.  After the jury trial concluded, several post-trial motions were filed, including a motion for a judgment notwithstanding the verdict ("JNOV") and request for reduction in damages filed by EAR which became fully ripe in May 2022.  On June 14, 2023, the trial court rendered its decision on the post-trial motions, granting EAR its motion for JNOV and request for reduction in damages but denying its claim for attorney fees as the prevailing party under the CSPA.

{¶ 5}   Given the lengthy procedural history of this matter, for ease of reference and clarity we set forth the pertinent facts and procedural background of this case in the following timeline:

- On or about October 2016, Stephen purchased a 2008 BMW Mini Cooper (the "Auto") for $1,000 for the use of his daughter, Natalie.

- On or about early December 2017, Stephen and his neighbor, Gilberto Nogueras, an airplane mechanic, replaced the Auto's leaking water pump in Stephen's driveway.

- After Stephen and Nogueras replaced the water pump, the car would not start.

- On or about December 6, 2017, Stephen contacted EAR and spoke to its owner, George Evans ("George") about the car not starting.

• On or about the evening of December 6, 2017, Stephen had the vehicle towed to EAR's business location. The parties dispute whether George authorized this or had prior knowledge that Stephen was having the Auto towed to EAR after business hours.

• The parties agree that in December 2017, the Auto, when in good operating condition, had a value of $5,000 to $6,000.

• Although the parties disagree on the details of the substance of their conversations surrounding the work to be done on the Auto, they agree that George suggested a diagnostic check to which Stephen agreed.

• According to George, the diagnostic check showed an "internal engine issue," and the parties agree that George contacted Stephen and initially quoted him "between $2,000 to $3000," which according to George was "to recondition the head, replace the timing chain, fix the broken guides, and the bent values." George asserted that Stephen authorized this work.

• Stephen, on the other hand, asserts that the quote "jumped to $3499 to include all necessary head work," but also asserted that EAR quoted "a price to complete all of the necessary work to repair the engine as $3,499." Stephen asserts that he agreed to "the cost of $3,499 for all the work necessary to make the car drivable."

• Subsequently, EAR made the repairs and reassembled the engine. According to George, the Auto "ran well for 10-15 minutes for a test drive, but then the check engine light came on." The defendant ran a computer diagnostic that revealed a "variator trouble code." An inspection was made which included removal of the oil pan whereupon it was discovered that there were "metal shavings and sludge in the pan," but the full amount of damage could not be determined without removing the engine.

• According to EAR (via George's testimony), Stephen was contacted to recommend removing the engine to find the cause of the metal shavings, or to install a used replacement engine. According to Stephen, George told him the entire engine would need to be replaced. The parties apparently do agree, however, that at this point Stephen declined any further work on the Auto.

• On or about January 8, 2018, Stephen and Nogueras went to EAR's location and removed personal items from the Auto. The parties agree this was the first time they met in person regarding the repairs to the Auto and further agree that EAR gave Stephen a document with a break-down of the work performed to date for a total cost of $3,902.15. The document also included estimates for a used engine and a new engine.

• Stephen did not pay for any repairs, and he left the vehicle at EAR.

• On March 8, 2018, the Prices filed their complaint against EAR, asserting three counts: various violations of the CSPA, fraud, and negligence, all alleged to have arisen out of the foregoing events surrounding the Auto at issue in this matter. The Prices alleged they are entitled to recover their actual damages relating to the transaction, plus an amount not to exceed $5,000 in noneconomic damages (Compl. at ¶ 86, 87, 88, 91, 92, and 93); "three times the amount of their actual economic damages" (*Id.* at ¶ 87, 88, 91, 92, and 93); and reasonable attorney fees incurred in the action. (*Id.* at ¶ 89, 94.)

• EAR filed an answer which included affirmative defenses and its own counterclaim, asserting claims for fraud, breach of contract, unjust enrichment, a claim for a common law artisan lien, a claim under the vexatious litigator statute, "violations of § 1345.09(F)(1) of the CSPA," and a claim for frivolous conduct in violation of Civ.R. 11 and R.C. 2323.51. EAR sought damages of $4,420.41 "for work approved, performed and unpaid and storage of $10.00 per day." EAR also sought relief in the form of retention of the Auto pursuant to its artisan lien "until fully paid."

• On May 22, 2019, the Prices dismissed the negligence claim.

• On July 12, 2019, the parties filed the first set[1] of two cross-motions for summary judgment. The Prices filed a motion for partial summary judgment seeking a declaration that EAR had committed fraud and violated the CSPA and requested a jury trial to determine damages; EAR filed a motion for summary judgment on all the Prices' CSPA claims and the fraud claim. EAR further sought summary judgment on its counterclaim for breach of contract (or in the alternative, for unjust enrichment). EAR also requested a declaration that EAR was

---

[1] These motions were not ruled upon.

entitled to a common law possessory (i.e., artisan) lien on the Auto.

• On April 22, 2020, the trial court granted EAR's motion for leave to file an amended counterclaim, instanter, filed on June 17, 2019, and on May 4, 2020, EAR filed its second amended counterclaim for money damages and other relief.

• On March 24, 2021, the Prices filed a motion to amend the case schedule, including to continue the trial date, and filed a motion for leave to file a second motion for [partial] summary judgment, instanter. Notably, the proposed second motion for partial summary judgment was essentially the same as their first pending motion, except to address the claims "added or changed by [EAR]'s Second Amended Counterclaim." (Mar. 24, 2021 Second Mot. for Partial Summ. Jgmt. at 1.)

• On April 22, 2021, the trial court issued an order amending the case schedule, including setting trial for November 15, 2021. On the same day the court granted the Prices' motion for leave to file their second motion for [partial] summary judgment.

• On June 21, 2021, EAR filed its second motion for summary judgment.[2]

• On October 12, 2021, the trial court issued a 28-page decision and entry granting in part and denying in part [the parties'] second motions for summary judgment. Most pertinent to the within appeal is that the trial court granted summary judgment in favor of EAR on the Prices' claims under the following code sections: R.C. 1345.03[3] and 1345.02(B)(7), Ohio Adm. Codes 109:4-3-13(C)(9), 109:4-3-10(A), 109:4-3-13(C)(8)[4], and 109:4-3-13(C)(5) and (6)[5].

---

[2] Apparently, EAR inadvertently failed to file to the record and/or attach certain pieces of evidence upon which it relied and to which it cited in its motion for summary judgment and memorandum contra the Prices' motion for partial for summary judgment, to wit: the affidavit of George Evans; the deposition transcript of Keith Glass; and the deposition transcript of Stephen Price (although the exhibits submitted as part of Stephen's deposition were filed to the record). Thus, the trial court properly limited its review to the evidence attached to the Prices' motion for partial summary judgment and the deposition transcripts properly filed to the record.

[3] The ruling pertaining to this code section corresponds to the Prices' first assignment of error.

[4] The ruling pertaining to these code sections corresponds to the Prices' second assignment of error.

[5] The ruling pertaining to these code sections corresponds to the Prices' third assignment of error.

• In its October 12, 2021 ruling, the court also granted summary judgment in favor of the Prices on EAR's counterclaims based on the vexatious litigator statute and the frivolous conduct statute and Civ.R. 11.

• Eventually, the case proceeded to a jury trial commencing on February 14, 2022. The trial lasted 5 days, and on February 18, 2022 the 8-person jury returned 4 verdicts: (1) the jury found in favor of the Prices "on Plaintiffs Stephen Price and Natalie Price's Ohio Consumer Sales Practices Act claim in the sum of $10,000." (*See* Verdict Form); (2) the jury found ". . . treble damages . . . should not be awarded against [EAR] on Plaintiffs' OCSPA claim"; (3) the jury found in favor of EAR on its breach of contract counterclaim and assessed damages in the amount of $3,958; and (4) the jury found in favor of the Prices' on EAR's counterclaim for unjust enrichment.[6]

• On March 18, 2022, the Prices filed a motion for award of attorney fees and costs.

• On March 22, 2022, the Prices filed a motion for judgment on EAR's remaining claims and a motion for satisfaction of judgment on EAR's breach of contract counterclaim.

• On April 17, 2022, EAR filed responses to the Prices' post-trial motions. EAR also filed a motion for JNOV and motion to reduce plaintiffs' damages award.

(*See*, Compl.; Answer & Countercl.; Oct. 12, 2021 Decision & Entry; and June 14, 2023 Decision.)

{¶ 6} On June 14, 2023, the trial court issued its decision on all post-trial motions and a final judgment entry. In its decision, the trial court granted EAR's motion for JNOV and overturned the jury's verdict on the Prices' CSPA claims, finding that (1) there was no probative evidence in the record or presented at trial by the Prices that any act or omission of EAR resulted in actual damage to the Prices as defined by R.C. 1345.09 of the CSPA; and (2) the Prices did not present any evidence at trial that any of the alleged violations of R.C. 1345.02 proximately caused the Prices to sustain any actual economic damages.[7] (*See*

---

[6] The jury was instructed to stop deliberating if it found in favor of EAR on its breach of contract counterclaim, but apparently disregarded this instruction. Consequently, the trial court found the fourth verdict "is meaningless as a matter of law and will be disregarded." (June 14, 2023 Decision at 13, fn 9.)

[7] Notably, the Prices have not asserted as error the trial court's decision granting EAR's motion for JNOV.

June 14, 2023 Decision.) The trial court also issued a decision granting the Prices' motion for judgment on EAR's claim for an award of attorney fees under R.C. 1345.09(F).[8]

{¶ 7} On July 7, 2023, the Prices timely filed this appeal.

{¶ 8} On July 12, 2023, EAR timely filed its cross-appeal.

## II. Assignments of Error–Prices' Appeal

{¶ 9} For their appeal, the Prices present three assignments of error for our review:

[1.] The Trial Court erred in its decision, rendered on October 12, 2021, holding that Appellee is entitled to judgment as a matter of law on Appellants' claims under R.C. 1345.03.

[2.] The Trial Court erred in its decision, rendered on October 12, 2021, holding that Appellee is entitled to judgment as a matter of law on Appellants' claims under R.C. 1345.02(B)(7), Ohio Adm. Code 109:4-3-13(C)(9), Ohio Adm. Code 109:4-3-10(A), and Ohio Adm. Code 109:4-3-13(C)(8).

[3.] The Trial Court erred in its decision, rendered on October 12, 2021, holding that Appellee is entitled to judgment as a matter of law on Appellants' claims under Ohio Adm. Code 109:4-3-13(C)(5) and (6).

## III. Assignment of Error–EAR's Cross-Appeal

{¶ 10} EAR has filed a cross-appeal that presents one assignment of error for our review:

The Trial Court erred when it held that the Court's October 12, 2021 Decision and Entry denying Defendant's Second Motion for Summary Judgment and granting summary judgment to Plaintiffs on Defendant's Counterclaims of Vexatious Litigation (Count Five) and Frivolous Conduct (Count Seven) precluded Defendant from establishing the second (groundless) and third (bad faith) prerequisites to the Court's consideration of an award of attorney fees under R.C. 1345.09(F)(1). This error is reflected in the Court's post-jury-trial Decision on June 14, 2023.

(Sic passim.)

---

[8] The trial court's decision granting the Prices' motion for judgment on EAR's claim for an award of attorney fees under R.C. 1345.09(F) is the basis for EAR's sole assignment of error.

## IV. Law And Discussion: The Prices' Appeal

### A. Standard of Review

{¶ 11} All three of the Prices' assignments of error arise from the trial court's decision on the parties' cross-motions for summary judgment. We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 12} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital Partners* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the nonmoving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

**B. The Consumer Sales Practices Act ("CSPA"), Generally**

{¶ 13} Ohio's Consumer Sales Practices Act set forth in R.C. Chapter 1345, "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03. "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio 4985, ¶ 24. (Footnote omitted.) The CSPA is a remedial law designed to provide civil remedies for aggrieved consumers and must be liberally construed in favor of consumers. *Phillips v. Ratchet Automotive & Performance*, 10th Dist. No. 19AP-399, 2021-Ohio-1033, ¶ 16. *See also, State ex rel. Celebrezze v. Hughes*, 58 Ohio St.3d 273, 275 (1991), citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27 (1990).

{¶ 14} R.C. 1345.09 grants to a consumer a cause of action and the right to seek relief under the CSPA "[f]or a violation of" R.C. Chapter 1345. In this case, two rights of relief under this provision are pertinent. First, where the alleged violation was an act prohibited by R.C. 1345.02, 1345.03 or 1345.031, "the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages," plus noneconomic damages up to $5,000. R.C. 1345.09(A). Second, where the alleged violation was an act or practice declared to be deceptive or unconscionable by a rule adopted by the attorney general[9] or an act or practice committed after a court has found that it violated R.C. 1345.02, 1345.03 or 1345.031, "the consumer may rescind the transaction or recover, but not in a class action, three times the amount of [his] actual economic damages or [$200], whichever is greater," and may recover noneconomic damages. R.C. 1345.09(B).

**C. First Assignment of Error**

{¶ 15} In their first assignment of error, the Prices assert the trial court erred in finding in its October 12, 2021 decision that EAR is entitled to judgment as a matter of law on the Prices' claims under R.C. 1345.03. We disagree.

---

[9] The attorney general is authorized by the CSPA to "[a]dopt substantive rules defining with reasonable specificity acts or practices that violate [the CSPA]." R.C. 1345.05(B)(2). These rules are found in the Ohio Administrative Code. *Nicholson v. Davis Auto Performance*, 5th Dist. No. 2023 CA 0022, 2024-Ohio-205, ¶ 19.

{¶ 16} R.C. 1345.03(B) provides, in pertinent part to the within matter, as follows:

> (B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
>
> * * *
>
> (3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
>
> * * *
>
> (6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

R.C. 1345.03(B)(3) and (6).

{¶ 17} " '[T]o recover under R.C. 1345.03, a consumer must show that a supplier acted unconscionably and knowingly.' " *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶ 36, quoting *Suttle v. DeCesare*, 8th Dist. No. 81441, 2003-Ohio-2866, ¶ 53, *appeal not allowed*, 100 Ohio St.3d 1425, 2003-Ohio-5232, citing *Karst v. Goldberg*, 88 Ohio App.3d 413, 418 (10th Dist.1993). " 'While proof of intent is not required to prove deception under R.C. 1345.02, *proof of knowledge is a requirement to prove an unconscionable act* under R.C. 1345.03.' " (Emphasis supplied.) *Id.*, quoting *Suttle* at ¶ 53, citing *Karst* at 418. Pursuant to R.C. 1345.01(E), " '[k]nowledge' [] 'means *actual awareness*, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness.' " (Emphasis supplied.) *Id.*, quoting *Suttle* at ¶ 53.

{¶ 18} In granting summary judgment in favor of EAR on the Prices' claim under R.C. 1345.03, the trial court found as follows:

> [T]here is no evidence in the record that [EAR] knowingly committed the acts described in R.C. 1345.03. In other words, there is no evidence that [EAR] acted with actual awareness that the [Prices] would not receive a substantial benefit from the transaction at the time it was entered into and that it had actual awareness that it made any misleading statements of opinion.

(Oct. 12, 2021 Decision & Entry at 9.)

**{¶ 19}** In support of their argument that EAR was not entitled to summary judgment on their claims under R.C. 1345.03, the Prices contend that the trial court used an incorrect analysis of the term "knowingly" in coming to its conclusion that EAR did not so act. The Prices rely on two Supreme Court of Ohio cases in furtherance of their contention that the trial court engaged in a flawed analysis: *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27 (1990), and *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833. We find these cases to be both inapposite to and wholly nonconflicting with the trial court's analysis.

**{¶ 20}** First, both *Einhorn* and *Charvat* are cases concerning the issue of when and whether a consumer is entitled to attorney fees pursuant to R.C. 1345.09(F)(2). The Prices' first assignment of error has nothing to do with whether attorney fees are warranted under R.C. 1345.09(F)(2)—instead, it concerns R.C. 1345.03 and what must be shown to recover under that section of the CSPA.

**{¶ 21}** Second, and more importantly, there is no conflict between the Supreme Court of Ohio's holding in *Einhorn* (followed by *Charvat*) and the trial court's analysis of the term "knowingly" in any event. In *Einhorn*, the Supreme Court determined that "knowingly" did not mean that a consumer must show that the supplier knew it was violating the CSPA at the time the unconscionable act was committed; rather, a consumer need only show that the supplier intentionally performed the unconscionable act in question. *Einhorn*, 48 Ohio St.3d at 29-30; *accord*, *Charvat*, 2007-Ohio-6833 at ¶ 25. Nowhere in the trial court's decision is there any indication that the trial court erroneously required the Prices to show that EAR knew it was violating the CSPA at the time it ostensibly made the unconscionable statements to Stephen. Instead, the trial court clearly stated the proper standard for what must be shown under R.C. 1345.03 to establish the element of "knowingly" as "that [EAR] acted with actual awareness that the [Prices] would not receive a substantial benefit from the transaction at the time it was entered into and that it had actual awareness that it made any misleading statements of opinion." (Oct. 12, 2021 Decision & Entry at 9.) Therefore, we reject the Prices' contention that the trial court used an incorrect analysis of the term "knowingly" when it granted summary judgment in favor of EAR on the Prices' claims brought pursuant to R.C. 1345.03.

{¶ 22} Furthermore, we reject the Prices' conclusory contention that EAR must have violated R.C. 1345.03 simply because "the communications made by [EAR] to the Prices proved to be false because [EAR] never actually fixed the vehicle * * * [and EAR] made misleading statements to the Prices when it represented that if the recommended repairs were made, the Prices would have a 'good running car for a long time to come[,]' " because the Prices have no such running vehicle. (Appellants' Brief at 17.) As discussed above, such a retrospective view is not the correct standard for what must be shown by the Prices to recover for their claims brought pursuant to R.C. 1345.03. Instead, the Prices must show that EAR acted with actual awareness that the Prices would not receive a substantial benefit from the transaction and that it had actual awareness that it made misleading statements of opinion *at the time the transaction was entered into*. Yet the Prices have pointed to no actual evidence in the record that shows that EAR knew at the time it made the allegedly misleading statements that the statements were, indeed, intended to be misleading. Without any such evidence, the Prices' claims under R.C. 1345.03 cannot properly survive summary judgment.

{¶ 23} In short, as the trial court found, there is no evidence in the record that EAR knowingly committed the acts described in R.C. 1345.03. Therefore, the trial court did not err in finding in its October 12, 2021 decision and entry that EAR is entitled to judgment as a matter of law on the Prices' claims under R.C. 1345.03.

{¶ 24} Accordingly, we overrule the Prices' first assignment of error.

### D. Second Assignment of Error

{¶ 25} The Prices next contend the trial court erred in finding in its October 12, 2021 decision and entry that EAR is entitled to judgment as a matter of law on the Prices' claims under R.C. 1345.02(B)(7), Ohio Adm.Code 109:4-3-13(C)(9), 109:4-3-10(A), and 109:4-3-13(C)(8). We do not agree.

{¶ 26} R.C. 1345.02(B)(7) provides in relevant part:

> The act or practice of a supplier in representing any of the following is deceptive:
>
> * * *
>
> (7) That replacement or repair is needed, if it is not.

{¶ 27} Ohio Adm.Code 109:4-3-13(C)(8) and (9) provide:

(C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:

* * *

(8) Represent that repairs or services are necessary when such is not the fact;

(9) Represent that repairs have been made or services have been performed when such is not the fact.

**{¶ 28}** Ohio Adm.Code 109:4-3-10 provides in pertinent part:

It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

(A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact.

**{¶ 29}** In their second motion for summary judgment, the Prices argued that "representing that paying $3,499 would result in a drivable, good car, when that was not the case," EAR committed a deceptive act or practice pursuant to Ohio Adm.Code 109:4-3-10(A) and 109:4-13-13(C)(8), and R.C. 1345.02(B)(7). (Apr. 26, 2021 Pls' Second Mot. for Summ. Jgmt. at 7-8.) The trial court disagreed, finding that "there is no evidence in the record that shows the work performed by [EAR] was not needed," and that George Evans' deposition testimony explained the issues diagnosed and repairs completed. (Oct. 12, 2021 Decision & Entry at 12.) Thus, the trial court found the statement made by EAR was not a deceptive act under either Ohio Adm.Code 109:4-3-13(C)(8) or R.C. 1345.02(B)(7) and granted summary judgment in favor of EAR on this claim. (*Id.*) However, the trial court left for the finder of fact the issue of whether the statement could be a violation of Ohio Adm.Code 109:4-3-10.[10] (*Id.*)

---

[10] Thus, the trial court did not grant summary judgment on this particular claim in favor of EAR, and we presume the Prices' inclusion of this code section in its assignment of error was an oversight.

{¶ 30} The Prices also asserted in their second motion for summary judgment that by "representing that the work that [EAR] performed actually repaired the vehicle when it is not drivable and requires a new engine," EAR committed a deceptive act under Ohio Adm.Code 109:4-3-13(C)(9) and R.C. 1345.02(B)(7). (Apr. 26, 2021 Pls' Second Mot. for Summ. Jgmt. at 8.) Similarly, the Prices asserted that by "representing a repair was needed to the engine when it was not," EAR committed a deceptive act under Ohio Adm.Code 109:4-3-10(A) and 109:4-3-13(C)(8), and R.C. 1345.02(B)(7). (*Id.*) Again the trial court disagreed, finding that "there is no evidence in the record that [EAR] represented to the [Prices] that it made certain repairs or completed certain services when it had not." (Oct. 12, 2021 Decision & Entry at 14.) The trial court further found the parties did not dispute EAR had told Stephen that additional work on the engine was needed and "the document he provided to Stephen on January 18, 2018 confirms such." (*Id.*) Most importantly, the trial court found that the Prices "do not dispute that additional work is actually needed on the engine, and in fact, this forms the basis for the claims in their complaint." (*Id.*)

{¶ 31} On appeal, the Prices essentially reiterate the arguments they made in their second motion for summary judgment. They also cite to two cases ostensibly in support of their position that EAR committed a deceptive act or acts under the code sections set forth above: *Johnson v. M & H Auto Repair*, Fairborn Municipal Court No. CV1101022 (2011) and *Crye v. Smolak*, 110 Ohio App.3d 504 (10th Dist.1996). This court has been unable to locate a copy of the (presumably) unreported Fairborn Municipal Court case cited by the Prices on Lexis, and a copy was not provided to the court as an attachment to the Prices' appellate brief; therefore, we are unable to entertain a review of this case.[11]

{¶ 32} As for the *Crye* decision, it stands for the proposition that where an automobile repair shop advises a customer that repairs have begun, when in fact those repairs have not been started, the repair shop commits a deceptive act pursuant to Ohio Adm.Code 109:4-3-13(C)(9). But the Prices have not identified any evidence in the record supporting this argument on appeal, i.e., that EAR ever advised the Prices that certain repairs had been made when in fact they had not been made. The best the Prices can do is

---

[11] *See* Loc.R. 8(E) of the Tenth District Court of Appeals which provides, in pertinent part, that "generally accessible legal authority need not be attached to a brief," the implication being that if it is not so generally accessible, a copy should be attached for the court's review.

cite to EAR's original quote of "$3,499.00 to complete all repair work to the Prices' vehicle." (*See* Appellants' Brief at 22.) Presenting a quote to complete work is not the same thing as asserting that repairs have been made when they have not. *Crye* is inapposite to the instant matter and is of no aid to the Prices on appeal. In short, the trial court correctly found that "there is no evidence in the record that [EAR] represented to the [Prices] that it made certain repairs or completed certain services when it had not." (Oct. 12, 2021 Decision & Entry at 14.)

{¶ 33} The trial court also correctly found that, the Prices' argument notwithstanding, the representation by EAR "that paying $3,499 would result in a drivable, good car, when that was not the case," was not a deceptive act under either Ohio Adm.Code 109:4-13-13(C)(8) or R.C. 1345.02(B)(7). This was so because, as the trial court found, there is no evidence in the record that shows the work ultimately performed by EAR was not needed, and the Prices have not specifically identified any such evidence on appeal. Instead, as found by the trial court, the evidence in the record, including the testimony of George Evans in his deposition, supports the finding that the work done was needed.

{¶ 34} In sum, the trial court did not err in finding in its October 12, 2021 decision and entry that EAR is entitled to judgment as a matter of law on the Prices' claims under R.C. 1345.02(B)(7), Ohio Adm.Code 109:4-3-13(C)(8) and (C)(9).

{¶ 35} Accordingly, we overrule the Prices' second assignment of error.

### E. Third Assignment of Error

{¶ 36} In their third assignment of error, the Prices assert the trial court erred in finding in its October 12, 2021 decision and entry that EAR is entitled to judgment as a matter of law on the Prices' claims under Ohio Adm.Code 109:4-3-13(C)(5) and (6). This assignment of error is meritless.

{¶ 37} Ohio Adm.Code 109:4-3-13(C)(5) and (6) provide:

> (C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:
>
> * * *
>
> (5) Charge for any repair or service which has not been authorized by the consumer;

(6) Fail to disclose upon the first contact with the consumer that any charge not directly related to the actual performance of the repair or service will be imposed by the supplier whether or not repairs or services are performed.

{¶ 38} In their second motion for summary judgment, the Prices argued that EAR violated Ohio Adm.Code 109:4-3-13(C)(5) and (6) by failing to disclose during their initial telephone call with Stephen that he would be charged a daily storage fee or attorney fees. (*See* Apr. 26, 2021 Pls' Second Mot. for Summ. Jgmt. at 11-12; Price Aff. at ¶ 42.) The trial court flatly rejected the Prices' argument, stating:

> [T]he [Prices] base this claim on [EAR's] counterclaim. They do not allege that prior to filling [sic] their complaint [EAR] has actually charged them for such fees. This is confirmed in a document the defendant provided to Stephen on January 8, 2018, which does not reflect that any of these fees were actually charged. * * * Thus, the Court agrees [EAR's] counterclaim for storage fees and attorney fees is not a violation of Ohio Adm.Code 109:4-3-13(C)(5) and (6).

(Oct. 12, 2021 Decision & Entry at 18.)

{¶ 39} On appeal, the Prices argue that "[EAR's] claim for fees arose at the time of storage of the vehicle. The fact that Evans only demanded fees in its counterclaim should not have negated the Prices' claim of excessive fees pursuant to the CSPA." (Appellants' Brief at 24.) Notably, the Prices do not assert that they were, in fact, ever charged storage fees and/or attorney fees by EAR. Furthermore, the Prices have cited to not a whit of authority for their proposition that Ohio Adm.Code 109:4-3-13(C)(5) and/or (6) can be violated by a supplier simply because the supplier asserts a counterclaim for its own alleged damages[12] after being sued by the consumer for alleged violations of the CSPA or any other claims. Nor has this court identified any authority in support of the Prices' position, and we decline the Prices' invitation to establish same.

{¶ 40} Therefore, the trial court did not err in finding in its October 12, 2021 decision and entry that EAR is entitled to judgment as a matter of law on the Prices' claims under Ohio Adm.Code 109:4-3-13(C)(5) and (6).

{¶ 41} Accordingly, we overrule the Prices' third assignment of error.

---

[12] In this case EAR's counterclaim was pleaded as a claim for an artisan's lien and a claim for its own attorney fees.

{¶ 42} Finally, in the last several pages of their brief, the Prices have presented various arguments ostensibly as part of their arguments pertaining to their third assignment of error: namely, that "[j]udgment on the Prices' CSPA claims should preclude [EAR's] claims under the same transaction"; that "[t]he Prices have established actual damages"; and that "[t]his Court should reverse and remand for judgment in the Prices' favor on their CSPA claims, and on all [EAR's] claims, including those that improperly proceeded to trial [and a] hearing should be set on the Prices' claims for damages and attorneys' fees." (*See* Appellants' Brief at 24, 26.) None of these arguments have anything to do with the Prices' third assignment of error, i.e., whether the trial court erred in finding in its October 12, 2021 decision and entry that EAR is entitled to judgment as a matter of law on the Prices' claims under Ohio Adm.Code 109:4-3-13(C)(5) and (6). Instead, all these arguments relate to the trial court's post-trial decision granting of EAR's motion for JNOV and for a reduction (i.e., negation) of the damages awarded to the Prices by the jury. (*See* June 14, 2023 Decision.) But the Prices have not assigned as error the trial court's post-trial decision granting EAR's motions for JNOV and for a reduction in damages.

{¶ 43} "This court rules on assignments of error, not mere arguments." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, citing App.R. 12(A)(1)(b) (stating "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs"); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding appellate courts "rule on assignments of error only, and will not address mere arguments"). If the Prices wished for us to determine the propriety of the trial court's rulings on EAR's motion for JNOV and motion for a reduction in damages, they should have assigned such as error. Because they did not, we decline to address their arguments pertaining to same.

## V.  Law And Discussion:  Cross-Appeal of EAR

{¶ 44} In its sole assignment of error, EAR argues that the trial court erred when it found, post-trial, that the court's October 12, 2021 decision and entry denying EAR's second motion for summary judgment and granting summary judgment to the Prices on EAR's counterclaims of vexatious litigation and frivolous conduct precluded Evans from establishing the second ("groundless") and third ("bad faith") prerequisites to the court's consideration of an award of attorney fees under R.C. 1345.09(F)(1). We disagree.

{¶ 45} The decision to grant or deny attorney fees under R.C. 1345.09(F) is discretionary. *Einhorn*, 48 Ohio St.3d at 29. Thus, we review the trial court's decision on EAR's motion for an award of attorney fees pursuant to R.C. 1345.09(F)(1) for abuse of discretion. *Williams v. Gray Guy Group., L.L.C.,* 10th Dist. No. 16AP-321, 2016-Ohio-8499, ¶ 44. A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 35. The term abuse of discretion, " ' commonly employed to justify an interference by a higher court with *the exercise of discretionary power* by a lower court, implies *not merely error of judgment*, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis sic.) *Id.*, quoting *Black's Law Dictionary* 11 (2d Ed.1910). An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *Byers v. Robinson*, 10th Dist. No. 08AP-204, 2008-Ohio-4833, ¶ 61. " 'An abuse of discretion will not be found when the reviewing court simply could maintain a different opinion were it deciding the issue *de novo*.' " *Id.*, quoting *Peterson v. Crockett Constr., Inc.*, 7th Dist. No. 99-CO-2, 1999 Ohio App. LEXIS 5956 (Dec. 7, 1999), citing *Lewis v. Alfa Laval Separation, Inc.*, 128 Ohio App.3d. 200, 207 (1998).

{¶ 46} The authority of a trial court to award attorney fees in actions brought under the CSPA is provided by R.C. 1345.09(F), which states as follows:

> (F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:
>
> (1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is *groundless*, *and* the consumer filed or maintained the action in *bad faith*;
>
> (2) The supplier has knowingly committed an act or practice that violates this chapter.

(Emphasis supplied.) Under the plain text of the statute, "when the plaintiff consumer prevails, he or she may obtain an award of reasonable attorney fees when the defendant

knowingly violated the CSPA. When the defendant is the prevailing party, however, it may obtain an award of reasonable attorney fees only when the consumer's action is groundless and the consumer files or maintains it in bad faith." *DeVito v. Autos Direct Online, Inc.*, 8th Dist. No. 100831, 2015-Ohio-3336, ¶ 39. Thus, "[t]he CSPA reflects a strong public policy that consumers who bring good faith claims against suppliers will not have to pay the supplier's attorney fees, even if the consumer loses his or her claim against the supplier." *Id.* at ¶ 40.

{¶ 47} In this case, in its June 14, 2023 post-trial decision granting the Prices' motion for judgment on EAR's claim for an award of attorney fees under R.C. 1345.09(F)(1), the trial court found that the pre-trial October 12, 2021 decision and entry denying EAR's second motion for summary judgment and granting summary judgment in favor of the Prices on Evans' counterclaims for vexatious litigator pursuant to R.C. 2323.52 and frivolous conduct pursuant to Rule 11 and R.C. 2323.51 "precludes [EAR] from establishing the second and third prerequisites to the Court's consideration of the award of attorney fees under R.C. § 1345.09(F)(1)." (June 14, 2023 Decision at 33.) In rejecting EAR's request for an award of attorney fees under R.C. 1345.09(F)(1) post-trial, the trial court first found that the essential elements of the counterclaims for vexatious litigator and frivolous conduct were in essence the same as the second and third prerequisites for an award of attorney fees under R.C. 1345.09(F)(1). (*Id.*)

{¶ 48} The trial court then reasoned that because the trial court had previously determined as a matter of law that the Prices had neither brought frivolous claims nor lacked a reasonable basis for filing their complaint, and further determined that their conduct in bringing and maintaining their action was neither frivolous nor served to merely harass or maliciously injure EAR, EAR could not now show that the Prices had brought or maintained an action that is groundless. Likewise, neither could EAR now show that the Prices had filed or maintained their action in bad faith. Therefore, the trial court concluded, EAR was precluded from successfully establishing the second and third prerequisites so as to be entitled to an award of attorney fees under R.C. 1345.09(F)(1).

{¶ 49} Ohio's vexatious litigator statute defines a "vexatious litigator" as "any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions * * *." R.C. 2323.52. "Vexatious conduct" is

conduct of a party in a civil action that: (1) obviously serves merely to harass or maliciously injure another party to the civil action, or (2) is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification or reversal of existing law, or (3) is imposed solely for delay. R.C. 2323.52(A)(2)(a) through (c). " 'The purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds and/or otherwise engage in frivolous conduct in the trial courts of this state.' " *Mayer v. Bristow*, 91 Ohio St.3d 3, 13 (2000), quoting *Cent. Ohio Transit Auth. v. Timson*, 132 Ohio App.3d 41, 50 (10th Dist.1998.)

{¶ 50} Ohio's frivolous conduct statute defines frivolous conduct as conduct that satisfies any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i) through (iv).

{¶ 51} We find no significant difference between the meaning of the terms "groundless" and "bad faith"—that which must be shown under R.C. 1345.09(F)(1)—and the meaning of the terms which must be shown under R.C. 2323.52 (the vexatious litigator statute) and/or R.C. 2323.51(A)(2)(a) (the frivolous conduct statute) as set forth above. Simply put, the terms "groundless" and "bad faith" used in R.C. 1345.09(F)(1) wholly

subsume the definitions and specific examples of vexatious and frivolous conduct set forth in the respective statutes and, EAR's protestations notwithstanding, any other reading of the meaning of the collective terms would be entirely nonsensical.

{¶ 52} Therefore, we find that the reasoning supporting the trial court's conclusion that the pre-trial October 12, 2021 decision and entry granting summary judgment in favor of the Prices on EAR's counterclaims for vexatious litigator and frivolous conduct precluded EAR from establishing the second and third prerequisites to the court's consideration of the award of attorney fees under R.C. 1345.09(F)(1) is entirely sound. As such, we find no abuse of discretion on the part of the trial court in its decision to reject EAR's request for an award of attorney fees under R.C. 1345.09(F)(1) because the decision is not unreasonable, arbitrary, or unconscionable.

{¶ 53} Accordingly, EAR's sole assignment of error is overruled.

## VI. Conclusion

{¶ 54} Based on the foregoing discussion, we find the trial court did not err in granting summary judgment in favor of EAR on the Prices' claims under R.C. 1345.02(B)(7) and 1345.03; Ohio Adm.Code 109:4-3-13(C)(5),(C)(6), (C)(8), and (C)(9); Ohio Adm.Code 109:4-3-10(A); therefore, we overrule all three of the Prices' assignments of error. Additionally, we find the trial court did not err in granting judgment in favor of the Prices on EAR's request for an award of attorney fees under R.C. 1345.09(F)(1); therefore, we overrule EAR's sole assignment of error on cross-appeal. Accordingly, we hereby affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

MENTEL, P.J., and EDELSTEIN, J., concur.

_____